[No. 14667. Department Two. — June 11, 1892.]

# P. A. DE FRIEZE, Respondent, *v.* ELIZABETH QUINT, Administratrix, etc., Appellant.

Deed — Grant of Absolute Title — Estoppel of Grantor — After-acquired Title — Tax Deed. — The grantor of land is estopped by his deed of grant, bargain, and sale to the grantee, purporting to convey an absolute title to the land, from denying that before and at the time of that deed he had such absolute title, and by that deed conveyed it to the grantee; and if any title is thereafter acquired by the grantor through a tax deed, such title inures to the benefit of the grantee alone.

Taxation — Void Assessment — Recitals in Certificate and Deed — Omission in Deed. — Where the certificate of a tax deed states that the property was assessed to a person named, "and to all owners and claimants, known and unknown," the certificate shows that the property was not lawfully assessed; and where the tax deed omits to recite the latter part of the assessment as recited in the certificate of tax sale, it is void for not reciting the matters recited in the certificate.

Id. — Effect of Recitals — Prima Facie Evidence — Disputable Presumption — Variance of Deed from Certificate. — A tax deed reciting a lawful assessment is only *prima facie* evidence that the property was assessed as required by law, resting upon a disputable presumption that the recital conforms to the certificate of sale; and where the certificate of tax sale shows an unlawful assessment, its introduction in evidence as a foundation for the admission of the deed not only proves that the property was not lawfully assessed, but also that the tax deed, not conforming to the recitals of the certificate, does not contain the recitals required by law.

Statute of Limitations — Adverse Possession — Notice to Owner. — In order to set the statute of limitations in motion against the owner of land, the adverse possession thereof must be sufficiently open and notorious to notify an ordinarily prudent owner of its existence, and of its hostile character, unless he is otherwise *actually* notified of such facts; and to be available against persons dealing with the owner for the land, the occupancy must be of such a character, at least, as should put them upon inquiry as to the title of the occupant.

Id. — Burden of Proof. — The burden of proving all the essential elements of an adverse possession, including its hostile character, is upon the party relying upon it.

Id. — Possession of Unimproved and Uninclosed Land — Notice of Adverse Possession — Prescription — Quieting Title — Finding against Evidence. — In an action to quiet title to land, where the plaintiff claims title by prescription, claiming adverse possession under a tax deed during five years before the commencement of the action, but the evidence shows that the land was uninclosed and uncultivated, and no person resided upon it; that it was bounded on all sides by uninclosed land, upon which, as well as upon it, the cattle of the neighbors roamed and grazed without restraint, — the fact that the plaintiff, through his lessee, erected upon the land a rude shed, sufficient to afford shelter to

"three valuable animals," is not sufficient, in the absence of express no-
tice, to justify the inference that the defendant had notice of an adverse
possession of the plaintiff, especially where there is no evidence that the
shed was ever used for any purpose, and will not justify a finding of ad-
verse possession of the land.

APPEAL from an order of the Superior Court of Marin
County, and from an order denying a new trial.

The facts are stated in the opinion.

*W. H. Payson,* and *Hepburn Wilkins,* for Appellant.

The purchase under tax sale by De Frieze was fraudu-
lent and void, and De Frieze could not base any adverse
claim or possession thereon. There was an implied cov-
enant, from the use of the word "grant," in the deed
from De Frieze to Quint, that the land was free from all
encumbrances made, done, or suffered by the grantor.
(Civ. Code, sec. 1113.) It was therefore a fraud on the
part of De Frieze to attempt to acquire a tax title to this
property upon an assessment for taxes, which, if valid,
was a lien at the date of the deed from him to Leander
Quint, which it was his duty to pay, and under such
circumstances the tax sale to De Frieze was void, and
he could claim no right or title thereunder. (*Kelsey*
v. *Abbott,* 13 Cal. 609; *McMinn* v. *Whelan,* 27 Cal. 300;
*Dolhequy* v. *Tabor,* 22 Cal. 279; *Coppinger* v. *Ford,* 23
Cal. 480; *Garwood* v. *Hastings,* 38 Cal. 217; *Reiley* v. *Lan-
caster,* 39 Cal. 354; *Christy* v. *Fisher,* 58 Cal. 256.) A tax
title procured by fraud is a nullity against the owner.
(*Shay* v. *McNamara,* 54 Cal. 169.) Where a conveyance
purporting to grant the property in fee-simple is made,
all subsequently acquired title passes to the grantee.
(Civ. Code, sec. 1106; *Clark* v. *Baker,* 14 Cal. 630; 76 Am.
Dec. 449; *Dalton* v. *Hamilton,* 50 Cal. 422; *Klumpke* v.
*Baker,* 68 Cal. 561.) De Frieze, having no possession
by inclosure or cultivation, and no color of title, has
failed to show the possession required by the statute of
limitations. (Code Civ. Proc., sec. 325.) Adverse pos-
session founded upon a written instrument must be

asserted in good faith with the *bona fide* belief that the claimant has the title. ( *Walsh* v. *Hill*, 38 Cal. 488; *Cannon* v. *Union Land Co.*, 38 Cal. 672; *McCracken* v. *San Francisco*, 16 Cal. 594–636; *Nieto* v. *Carpenter*, 21 Cal. 490; *Wilson* v. *Atkinson*, 77 Cal. 492; 11 Am. St. Rep. 299; *Silvarer* v. *Hansen*, 77 Cal. 582.) The tax sale was void on its face. The assessment was to John De Frieze, and all owners, known and unknown, and this renders the deed void. ( *Grotefend* v. *Ultz*, 53 Cal. 666; *Daly* v. *Ah Goon*, 64 Cal. 512.) No claim of title can be asserted under an instrument which is void on its face. ( *Nieto* v. *Carpenter*, 21 Cal. 490.) Adverse possession, to be available, must be continued for the full period prescribed by the statute; and if it was interrupted, it is not available. ( *City of San José* v. *Trimble*, 41 Cal. 536; *Trotter* v. *Cassidy*, 3 A. K. Marsh. 365; 13 Am. Dec. 183.) If the legal owner of the land enters with intent to reclaim the possession, the adverse possession is thereby terminated. (Note to *Trotter* v. *Cassidy*, 13 Am. Dec. 185; *Taylor* v. *Burnsides*, 1 Gratt. 165; Tyler on Ejectment, 908, 909; *Hood* v. *Hood*, 2 Grant Cas. 229; *Johnston* v. *Fitz George*, 50 N. J. L. 470.) When the possession was interrupted, Quint, having the true title, had the constructive possession of the whole tract, and De Frieze had not. De Frieze could not dispute the fact that Quint had the true title, because the grantor is estopped by his deed from denying the title of his grantee. ( *Dodge* v. *Walley*, 22 Cal. 228; 83 Am. Dec. 61; *Belcher Con. M. Co.* v. *Deferrari*, 62 Cal. 162.) Where two parties claim the constructive possession of the same property, and one has the title, as Quint did in this case, and the other has not, the superior title draws to itself constructive possession of the land as against the inferior or invalid title. ( *Semple* v. *Cook*, 50 Cal. 26.) De Frieze cannot claim title against his own deed without first notifying his grantee that he so claims, or actually ousting him. Possession by a grantor, after he has deeded away the land, must be deemed to be in subordination to the legal title, and will not be presumed to be adverse without proof of ouster, or notice

of the claim of title in hostility to the true owner, which would amount to an ouster. (*Jackson* v. *Burton*, 1 Wend. 341; *Burhans* v. *Van Zandt*, 7 Barb. 91; *Schwallback* v. *Chicago etc. R'y Co.*, 73 Wis. 137; 69 Wis. 292; 2 Am. St. Rep. 740; *Jay* v. *Welchel*, 78 Ga. 786; *Evans* v. *Templeton*, 69 Tex. 375; 5 Am. St. Rep. 71.) The alleged possession of plaintiff was not notice of adverse holding. The notice and ouster must be actual, to constitute adverse possession against a tenant in common or trustee. (*Watson* v. *Sutro*, 86 Cal. 500; *In re Grider*, 81 Cal. 571.) The alleged possession of De Frieze was insufficient. Allowing cattle to roam over unfenced land is not sufficient to constitute adverse possession. (*Wilson* v. *Corbier*, 13 Cal. 166; *Buel* v. *Frazier*, 38 Cal. 693; *Sepulveda* v. *Sepulveda*, 39 Cal. 18.) The payment of taxes was not a continued notice that adverse possession was being maintained. (*Davis* v. *Perley*, 30 Cal. 631.) Even if there was no evidence of De Frieze having been in possession when he sold the property to Judge Quint, the law would presume that he was so in the possession from the fact that the owner of land is presumed to be in the possession thereof unless the contrary is established. (Code Civ. Proc., sec. 321; *Minturn* v. *Brower*, 24 Cal. 660; *Garwood* v. *Hastings*, 38 Cal. 223; *Shiels* v. *Haley*, 61 Cal. 157.)

*George W. Towle, Jr.*, and *McKoon & Towle*, for Respondent.

What constitutes an adverse possession upon which a title to land may be supported is, in this state, a matter of statute, and the acts constituting a statutory adverse possession must, in the very nature of things, constitute notice in and of themselves. A statutory adverse possession is notice. (See *Murray* v. *Hoyle*, 92 Ala. 559; Code Civ. Proc., secs. 323, 325.) When an adverse possession by use for pasturage has once commenced, nothing short of an interruption of such occupancy and use, or the payment of taxes, will stop the running of the statute in favor of such adverse holder. (Civ. Code, sec. 1007.

See also note to *Trotter* v. *Cassidy*, 13 Am. Dec. 185.)
Occasional interruptions of possession during the pe-
riod necessary to create a title by adverse possession,
which do not impair the use to which the occupant sub-
jects the property, and for which it is chiefly valuable,
will not necessarily defeat the presumption of a grant.
(*Fuller* v. *Fletcher*, 44 Fed. Rep. 34.)    Quint certainly had
notice of the plaintiff's adverse possession.    The pay-
ment of taxes, such constituting a necessary element of
an adverse possession, was a continued notice to Quint
that such possession was being maintained.    (*Sorber* v.
*Willing*, 10 Watts, 142; *Bird* v. *Dennison*, 7 Cal. 297, 311.)
Quint could not have visited the property subsequent to
the first day of September, 1883, without having notice
given by the building upon the premises, and the cattle
grazing upon it, that a use of the premises, adverse in
character, was being made.    (*Unger* v. *Mooney*, 63 Cal.
586, 596; 49 Am. Rep. 100.)    If possession has been ac-
companied by acts indicating an adverse claim of title
of so notorious a character as to satisfy a jury that a
person ordinarily attentive to his interests would have
notice of the adverse claim, a finding of adverse posses-
sion will be sustained.    (*Oglesby* v. *Hollister*, 18 Pac. Rep.
149.)    In order for the appellant's claim that there was
an implied covenant from the use of the word " grant " in
the deed, that the land was free from encumbrances, to
have held good he should have shown that the tax was
assessed to him.    (See *Kelsey* v. *Abbott*, 13 Cal. 609, 617.)
Payment of taxes accompanied by actual occupancy is
equivalent to an actual ouster.    (*Sorber* v. *Willing*, 10
Watts, 142.)    Omission to pay taxes for statutory period
is a confession of ouster.    (*Royer* v. *Benlow*, 10 Serg. &
R. 306.)    The deed being fair on its face, the record
showing it to be valid, possession under it from its date
will be presumed.    (2 Desty on Taxation, 1009.)    A tax
deed vests absolute title to the interest and estate of the
original owner.    (2 Desty on Taxation, p. 966, sec. 150.)
A tax deed, although not fair on its face, in fact void, is.

color of title. (*Wilson* v. *Atkinson*, 77 Cal. 485; 11 Am.
St. Rep. 299; *Webber* v. *Clarke*, 74 Cal. 11.)

VANCLIEF, C. — Action to quiet plaintiff's alleged
title to a tract of swamp and overflowed land, containing
ninety-one acres, situate in Marin County. The action
was brought against Leander Quint in his lifetime, for
whom the administratrix of his estate was substituted
before trial. Judgment passed for plaintiff, and defend-
ant appeals therefrom, and also from an order denying
her motion for new trial.

The defendant claimed title by a grant, bargain, and
sale deed from plaintiff, reciting a paid consideration of
$150, and executed January 18, 1879.

The plaintiff claims title by a tax deed executed to him
by the tax collector of Marin County on March 1, 1880,
and also by prescription, alleging adverse possession
under the tax deed during five years before the com-
mencement of the action.

The recitals in the tax deed show that the taxes for
which the land was sold to plaintiff were state and
county taxes assessed to *John* De Frieze for the fiscal
year ending June 30, 1879, amounting to $1.55, and that
the property was sold to plaintiff for this sum, plus
costs and charges, altogether amounting to $2.73.

The title was not traced to any higher source than the
plaintiff, though the description of the land in the deed
of January 18, 1879, from plaintiff to defendant, closes
as follows: "For more particular description, see patent
recorded in liber A, page 377, of records of Marin
County."

The patent referred to was not put in evidence, but in
rebuttal plaintiff's counsel read in evidence the descrip-
tion of the land from the record of that patent, which
appeared to be the same as that contained in the deed
of plaintiff to the defendant, but did not read enough to
show who was the patentee. There is nothing in the
record tending to prove that John De Frieze was the
patentee, or that he ever owned the land in question,

except that the tax for which the land was sold was as-
sessed to him. Finally, it does not appear how or from
whom plaintiff originally acquired title to the land be-
fore the date of his deed to defendant, yet he is estopped
by his deed to defendant, purporting to grant the abso-
lute title, from denying that before and at the date of
that deed he had such absolute title, and by that deed
conveyed it to the defendant. (*Belcher etc. M. Co.* v. *De-
ferrari*, 62 Cal. 160; *Dodge* v. *Walley*, 22 Cal. 228; 83 Am.
Dec. 61; *Haffley* v. *Maier*, 15 Cal. 13; *Clark* v. *Baker*, 14
Cal. 613; 76 Am. Dec. 449); and it is also clear, that if
any title passed by the tax deed, such title would have
inured to the benefit of the defendant alone. But it ap-
pears that the tax deed was utterly void. The certificate
of the tax sale, introduced by plaintiff as a part of his
evidence in chief, states that the property was assessed
to " John De Frieze, *and to all owners and claimants, known
and unknown.*" These words in Italics do not appear in
the tax deed, as required by section 3786 of the Political
Code, although it appears that they were recited in the
deed as drawn, but were stricken out before the deed
was executed, thus showing that section 3786 of the
Political Code was deliberately disregarded. Counsel
for respondent contend that the deed alone can be re-
ceived as evidence of the assessment, and that the cer-
tificate of sale put in evidence by plaintiff as a foundation
for the deed must be disregarded. In this I think coun-
sel are mistaken. The deed is only " primary " (*prima
facie*) evidence " that the property was assessed as re-
quired by law"; and this rests on the disputable pre-
sumption that the matters recited in the certificate are
recited in the deed, as required by section 3786 of the
Political Code. Here the plaintiff proved by the certifi-
cate that the property was *not* assessed, as required by
law, before the deed was offered in evidence. Section
3776 of the Political Code requires the certificate to state
" (when known) the name of the person assessed," while
the deed is required to recite only the matters recited in
the certificate. By first introducing the certificate, the

plaintiff proved not only that the property was not lawfully assessed (*Daly* v. *Ah Goon*, 64 Cal. 512), but also that the deed did not contain the recitals required by law.

Plaintiff's main reliance, however, is upon title by prescription, arising from his alleged adverse possession.

The evidence relied upon to prove adverse possession tended to prove only the following facts: Three years and five months after the execution of the tax deed, to wit, on August 13, 1883, the plaintiff executed to Bernard T. Miller a lease of the land in question for the term of five years, at a rental of twenty-five dollars per year, the lessee covenanting to construct upon the premises, within twenty days from the date of the lease, " a building suitable to afford protection in winter to at least three valuable domestic animals." At the time of the execution of this lease, the land had no improvements upon it, and never had been inclosed, cultivated, nor occupied by any person. The greater portion of it was low, boggy land, but during portions of the year it afforded feed for cattle, which had been accustomed to graze upon it. James Miller, the father of the lessee, had a ranch adjoining the leased premises, on the west side thereof, but which was not fenced on that side. " Cattle could roam at will over this land [land in question] from any contiguous land." James Miller kept a dairy and a number of cows on his ranch. About the time that Bernard T. Miller took the lease from plaintiff, he also leased from his father, James Miller, the latter's dairy and cows, and thereafter allowed these cows, with others of his own, to graze upon the leased land, but without a herder, except to drive the cows from the land for the purpose of milking, and to return them after milking. The cows were not confined to the leased land, but could graze upon other adjoining land; and there was nothing to prevent the cattle of other persons from grazing upon the leased land. Being asked if other cattle than his own were pastured upon it during the term of the lease, Bernard Miller answered: " They might have been; I cannot say positively.. Cattle get back and forth on the

ranches once in a while. I could not say positively
whether there were or not. . . . . I never remembered
seeing any cattle on there excepting my own and those
I had rented from my father." About a month after
the date of the lease, B. F. Miller constructed a shed on
the land, sufficient to shelter three cows, by setting a
post in the ground at each of the four corners and cov-
ering it with boards, and also boarding up three sides
of it, but leaving one side open. This was the only
improvement placed upon the land by him or plaintiff,
and it does not appear whether the shed was ever used
by him or not. During the first four years of the lease
he resided about a half a mile from the land, but within
sight of it, and during the remainder of the term he
resided farther from the land. It does not appear that
he personally attended to the dairy, but does appear
that he was absent from it a considerable portion of the
time. In the way above described, he used the land in
question during a term of five years before the com-
mencement of this action, but in no other way. It does
not appear that his lease was recorded, nor that defend-
ant had actual notice of it, or notice that he used or
claimed the land for any purpose during the first four
and a half years of the alleged adverse possession.
About five months before the alleged five years of ad-
verse possession expired, the defendant erected a house
upon the land, twenty feet long by twelve feet wide, in
which his employee resided several weeks immediately
after it was built, and it was while this house was being
built that Miller first notified defendant that he (Miller)
had a lease of the land, and claimed the possession of it.
Defendant also built a fence on a portion of the line
between the land in question and the land of James
Miller, immediately after building the house. After the
expiration of Miller's lease, and while defendant and his
employee were absent from the house, the plaintiff took
possession of it, and forcibly prevented them from re-
entering. The tax deed to plaintiff was recorded March
1, 1880, and the plaintiff paid the taxes on the land for

the years 1881, 1883, 1884, 1885, 1886, 1887, and 1888, said taxes having been assessed to him for those years; but there is no evidence that defendant had actual notice of the deed, or that plaintiff paid the taxes or claimed the land until after defendant built the house on the land. At no time after the execution of the tax deed was plaintiff in the possession of any part of the land, unless he was so by his tenant, Miller, until he took possession of the house built by defendant, as above stated.

On the facts above stated, counsel for appellant contends,— 1. That the tax deed gave plaintiff no color of title, because he obtained it in bad faith, and for the mere purpose of creating a sham color of title; 2. That even conceding that the tax deed gave color of title, the plaintiff never had adverse possession of the land during any period of time; 3. That conceding adverse possession, it was not continuous during a period of five years, having been interrupted by defendant at the time he built the house and fence on the land, five months before the five years' adverse possession was complete.

As I think the second of these positions should be sustained, the first and third need not be considered.

It is contended for respondent, and the court found, that the acts of plaintiff and his lessee, Miller, constituted adverse possession as defined in section 323 of the Code of Civil Procedure, which is substantially the same as section 11 of the act of 1850, " defining the time for commencing civil actions " (Hittell's Gen. Laws, art. 4353), and which, so far as applicable here, is as follows: " For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, . . . . land is deemed to have been possessed and occupied in the following cases: . . . . 3. Where, although not inclosed, it has been used for the supply of fuel or of fencing timber for the purposes of husbandry, or for *pasture,* or for the ordinary use of the occupant."

It has been uniformly held in this state that, in order to set the statute of limitation in motion against the

owner of land, the occupancy thereof must be sufficiently open and notorious to notify an ordinarily prudent owner of its existence, and of its hostile character, unless he is otherwise *actually* notified of these facts; and to be available against persons dealing with the owner for the land, the occupancy must be of such a character, at least, as should put them upon inquiry as to the title of the occupant (*Thompson* v. *Pioche,* 44 Cal. 508; *Thompson* v. *Felton,* 54 Cal. 547; *Fair* v. *Stevenot,* 29 Cal. 488; *Smith* v. *Yule,* 31 Cal. 182; 89 Am. Dec. 167; *Unger* v. *Mooney,* 63 Cal. 586; 49 Am. Rep. 100; *Thomas* v. *England,* 71 Cal. 457); and the burden of proving all the essential elements of an adverse possession, including its hostile character, is upon the party relying upon it. (*American Co.* v. *Bradford,* 27 Cal. 361; *Lick* v. *Diaz,* 30 Cal. 75; *Garwood* v. *Hastings,* 38 Cal. 223.)

The evidence furnishes no ground for a pretense, even, that defendant ever had actual or express notice that the plaintiff or his lessee had or claimed any kind of possession until about the time that defendant built his house upon the land, which was not more than six months before the alleged period of five years' adverse possession expired.

Conceding that what is proven to have been done on the land by plaintiff and his lessee, Miller, constituted any kind of possession, which may be regarded as doubtful, such possession was not of such a character as to justify the inference that defendant had notice of its existence even, much less that it was hostile to his title, until four years and six months of the alleged period of adverse possession had elapsed. The land was uninclosed and uncultivated. No person resided upon it. It was bounded on all sides by uninclosed land, upon which, as well as upon it, the cattle of the neighboring ranchers roamed and grazed without restraint. Defendant had no notice of the lease to Miller, nor that Miller had leased his father's dairy or cows, or controlled any cattle that grazed upon the land except his own. The grazing of his neighbors' cattle upon the land, so long as defend-

ant made no effort to restrain them, by inclosure or otherwise, did not indicate to him that his neighbors had or claimed adverse possession of his land. The little shed sufficient to afford shelter to " three *valuable* domestic animals," say ten feet square and seven feet high, is the only thing relied upon to indicate to defendant that plaintiff or Miller was in possession of the land; and no doubt it was intended to be used as evidence of such possession, and *for no other purpose.* So important was it considered by the plaintiff, that the only visit he made to the land during the term of the lease was for the purpose of ascertaining whether Miller had built it according to the covenant in the lease. Why was this shed required to be sufficient to shelter only three valuable animals? Why is there no evidence that it was ever used for any purpose? It was obviously a mere sham, which should be allowed no effect whatever as evidence of possession.

I think the finding of adverse possession of the land in question is not justified by the evidence, and that the judgment and order should be reversed, and a new trial granted.

BELCHER, C., and TEMPLE, C., concurred.

The COURT. — For the reason given in the foregoing opinion, the judgment and order are reversed and a new trial granted.

Hearing in Bank denied.