Edward Van Husen *et al*, Appellants, v. The Omaha Bridge and Terminal Railway Co., Appellee.

Condemnation: ESTOPPEL BY DEED. A grantor is estopped by his deed
1 from claiming that he had no interest in the land at the time of his conveyance.

Deed; PAROL TESTIMONY: ADMISSIBLE WHEN. Where there is no
2 uncertainty or ambiguity in a deed, parol evidence is not admissible to show the intent of the parties.

Same. Parol testimony is not admissible to show that a roadbed
3 is a fixture, and does not pass by deed, in the absence of an express reservation in the deed.

Same: WHEN AND WHAT PROPERTY PASSES BY A DEED. Where a
4 deed refers to a certain contract as the consideration therefor, but no reference to the contract is made in the granting clause, the deed conveys the property as it stood at the date of its execution.

Damages: WHEN TO BE DETERMINED. Upon the condemnation of
5 land for railroad purposes, damages should be allowed as of the time of entry by the company upon the land.

*Appeal from Pottawattamie District Court.*—Hon. N. W. Macy, Judge.

Wednesday, October 29, 1902.

Condemnation proceedings to assess the amount of damages to which plaintiffs are entitled by reason of the occupancy of a part of their lands by the defendant railway company. From the award made by the district court, plaintiffs appeal.—*Affirmed.*

*Gains, Kelby & Storey* and *Stone & Tinley* for appellants.

*Wharton & Baird* and *Harl & McCabe,* for appellee.

DEEMER, J.—Some time in the fall of the year 1889 the
Union Pacific Railway Company commenced the construc-
tion of the roadbed in question.   At that time the owner-
ship of the land on which the railway was constructed,
together with other lands in what is known as the "East
Omaha Bottom," was in dispute.   The Union Pacific Com-
pany, the East Omaha Land Company, and the Nebraska
Ferry Company, and Anthony W. Street, its trustee,
claimed ownership of portions of the land lying in that
bottom; the boundaries of the respective tracks being un-
known, and in dispute.   Soon after the Union Pacific
Company commenced the construction of its road, Street,
trustee, commenced action for the purpose of enjoining the
railway company from constructing its road over the land
now in dispute, claiming that the same was owned by the
Nebraska Ferry Company.   At the same time an action was
pending in the federal courts of Nebraska, in which Street
was complainant, and the East Omaha Land Company and
others were defendants, the purpose of which was to deter-
mine the boundary lines of the several tracts of land, and
to quiet title thereto in the respective claimants.   These
suits were settled by an agreement signed by all the par-
ties, in which the Union Pacific Company was named as
party of the first part, the East Omaha Land Company as
second, and the Nebraska Ferry Company as third party.
The material parts of that agreement are as follows:
"Whereas, divers controversies and disputes have sprung
up between the parties hereto, touching the title to the
premises hereinafter described, and a certain bill in equity
is pending in the United States circuit court for the dis-
trict of Nebraska between the said Anthony W. Street,
plaintiff, and the East Omaha Land Co., defendant, for the
quieting of the title to certain of the said lands in the
said plaintiff; and another action is pending in the district
court of the state of Iowa, for the county of Pottawattamie

between the said Street, plaintiff, and the said Union Pacific Railway Company and others, defendants, to restrain the construction by said defendants of a railroad over and upon certain of said lands; and whereas, the said parties have agreed to settle and compromise their said differences as hereinafter set forth: Now, therefore, for the said purposes it is hereby agreed between the parties hereto as follows: (1) The said Street agrees to cause to be dismissed out of said two courts his said two actions above mentioned, and the said defendant in the said action secondly above entitled releasing him from all damages on account of the injunction allowed and issued therein. (2) The said second and third parties each for itself, and not one for the other, covenants and agrees to and with the said first party to make to it their several deeds of conveyance of all that certain piece or parcel of land described as follows, that is to say: [Here follows description of lands not in controversy in this action.] (3) The said first and second parties each for itself, and not one for the other, covenants and agrees to and with said third party to make to it, or to such person as it may appoint in that behalf, their several deeds of conveyance of all that certain piece or parcel of land described as follows: [Here follows a description of premises which include the land in question.] (4) The said second party covenants and agrees to and with said third parties to make to such parties as the said Council Bluffs and Nebraska Ferry Company may appoint in that behalf a deed of conveyance of all that certain piece or parcel of land described as follows: [Here follows description of premises not in controversy.] (5) The said third parties covenant and agree to and with said second party to make the said second party a deed of conveyance of all that certain piece or parcel of land described as follows: [Here follows a description of land not in controversy.]" Immediately after the execution of the agreement the Union Pacific Company proceeded with the

construction of its roadbed, and completed the same on or about December, 1900.   This roadbed consisted of an embankment some six feet high, thrown up from the adjacent soil; and the south side of the embankment was riprapped with stone, to protect it from the ravages of the Missouri river, which, as we understand it, parallels the right of way for nearly its entire length.   This embankment also served as a levee or dyke, preventing the overflow of high water upon the lands owned by all of these parties, which are low and flat.  The road was built primarily to furnish trackage and railway facilities for the East Omaha Land Company, which was endeavoring to sell its lands, and to establish manufactories thereon; and was built under some kind of a contract or arrangement, the exact purport of which is not in evidence.   By the terms of the settlement to which we have already referred, the Union Pacific Company was to convey the land in controversy, which is occupied in part by the roadbed erected by that company, to the Nebraska Ferry Company or to A. W. Street as trustee; but for some reason, not fully explained, the deed was not made until December 10, 1892.

As the controlling points in the case turn upon the effect to be given this deed, we here set out the material parts thereof.   After reciting the general facts set forth in the instrument of settlement, it recites:   "That the said party of the first part (Union Pacific Railway Co.) in consideration of the sum of one dollar, to it in hand paid, the receipt whereof is hereby acknowledged, and in further consideration of the premises aforesaid, has granted, bargained, sold, remised, and quitclaimed, and by these presents does grant, bargain, sell, remise, and quitclaim, unto the said party of the second part, his heirs and assigns, forever, the following described real estate:   [Being land in controversy herein and other lands]; together with all and singular the hereditaments and appurtenances thereunto

belonging; to have and to hold the above-described premises unto the said Anthony W. Street, trustee, his heirs and assigns, so that neither the said Union Pacific Railway Company, nor any person in its name and behalf, shall or will hereafter claim or demand any right or title to the said premises, or any part thereof, but that they, and everyone of them, shall, by these presents, be excluded, and forever barred. And the said party of the first part hereby specially covenants that the said premises are free from any incumbrance placed thereon by it, and it further specially covenants to warrant and defend the title to the same as against any and all persons claiming through or under it, or its successors or assigns,"—duly signed and acknowledged December 16, 1892. In the fall of 1892 plaintiffs began negotiations with Street and the ferry company for the purchase of the lands in controversy; with other lands, and on December 30th of that year acquired title thereto from the ferry company by a deed of general warranty. On January 12, 1893, Street also conveyed to the plaintiffs by a like character of deed; but both contained this exception: "Subject also to right of way, if any, over said premises, fifty feet wide, now occupied by the tracks of the Union Pacific Railway Co." The deed from the Union Pacific Railway Company was made while the negotiations were pending resulting in the plaintiffs' acquirement of title. It was procured by one John R. Webster, who represented the ferry company. Webster said, while on the witness stand, that he was endeavoring to clear up the title, and that plaintiffs would not buy the land unless the title was clear. The Union Pacific Company was then in possession of the part of the land covered by its roadbed and tracks, and Webster testified with reference thereto as follows: "At the time of the negotiations I went over the land with Mr. Van Husen, and this track with the embankment came up. There was some conversation between us with reference to the ownership of that right of way,

and matters of that kind.  I could not tell exactly what
I said, but my recollection is that I did tell him that we
could get a deed from the Union Pacific Railway Company
with reference to that.  I think I told him of the deed
which was already drafted, but had not been executed.
The contract for this deed from the Union Pacific had been
made some time in December, 1889.  The fact is, the De-
troit people said, unless they got the right of way, they did
not want to purchase.  I don't think I can give the words
we used, but the Detroit syndicate people, represented by
Mr. Van Husan, would not make the purchase if the land
was going to be divided by a track; and I was anxious, of
course, to get something that would suit them, and get
them to buy the land, because I was assisting Mr. Potter,
and I may have said a good many things there that I forget
now."  He also testified, with reference to the exceptions
in the deed from the Nebraska Ferry Company and A. W.
Street, as follows: "I had some difficulty over that clause
in those deeds, and I think I probably used the Union
Pacific deed to satisfy the syndicate people that that
clause really did not amount to anything.  I know I tried
to do it at that time."  Mr. Van Husan, one of the plain-
tiffs, testified as follows with reference to this transaction:
"I cannot say positively when I first learned anything con-
cerning a claimed mistake in the deed of the Union Pacific
people; but it was a long time after we purchased the prop-
erty, and after the deal was closed.  This question of the
right of way of the Union Pacific came up on the day of
the negotiations for the purchase.  We and Mr. Webster
went over the land, and we saw the track and embank-
ment there thrown up, and we asked Mr. Webster if that
belonged to the land, and Mr. Webster said no, that it did
not, that it belonged to the Union Pacific road, and they
had put it there.  We asked if they had any rights there,
or any permission from the property owners, and he said
no.  He said they had no rights except by sufferance.  We

told Mr. Webster that he must procure a deed from the
Union Pacific road in this deal, and he said he would. I
don't remember now whether he said the deed was
drafted but anyway the deed that has been offered in
evidence was the deed he procured in compliance with
our request.    We bought the land relying on the title
that was conveyed there.    When the Detroit people pur-
chased the land, they bought it relying upon the title as
conveyed by the deeds." It is also shown that after the
deed from the Union Pacific Company was obtained Mr.
Webster went to that company to have a correction deed
executed, and in the conversation with its attorney that
official  said that when they executed the new deed they
should reserve out of it the right of way they were then
occupying with their tracks.    No new deed was made, but
it is shown that the Union Pacific Company knew at that
time that the deed it did execute contained no exceptions
or reservations.    It will be observed in passing that the
railway company did not at that time claim that there had
been any mistake in the deed, nor is such claim made now.
In March of the year 1894 the United States circuit court
of Nebraska rendered a decree in an action wherein the
Union Pacific Railroad Company was complainant and the
East Omaha Land Company and certain railway companies
were defendants, wherein it was found that the railway
company had no interest in the land on which it had built
its tracks, but that it was entitled to reimbursement for
money expended in building the same in the sum of
$85,000; and it was further ordered that upon payment of
said sum to the Union Pacific Company or to its receivers
the said company will be barred from any right, title, or
interest in or to said tracks under the contract aforesaid,
and that it shall convey by quitclaim deed all its right,
title, or interest therein to a right of way of the width of
one hundred feet, being fifty feet on each side of the cen-
ter line of its said track, from the commencement point of

said track as hereinbefore described eastward. None of plaintiffs or their grantors were made parties to this action. The amount awarded to the Union Pacific Company was paid. The Nebraska Construction Company, another corporation, undertook to procure from the Union Pacific Railway Company, for the benefit of the defendants herein, all its tracks, franchises, rights of way, etc., on and over the lands of the East Omaha Land Company; and this construction company, as we understand it, paid the $85,000 awarded in the decree of the United States circuit court; and, having procured whatever rights the East Omaha Land Company had in virtue of the decree, it transferred the same to the defendant the Omaha Bridge & Terminal Railway Company, which took possession thereof on the 31st day of March, 1894, and has continued to use and oc cupy the same down to this time. The track, etc., so taken possession of includes that in dispute, which occupies something like 3.54 acres of land, as well as the track running over the lands of the East Omaha Land Company. This proceeding was instituted by defendant for the purpose of condemning this 3.54 acres of land, and the questions arising on this appeal are: First, who is entitled to the roadbed and embankment erected by the Union Pacific Company? and, second, as of what date should damages be be assessed?

The value of the roadbed and embankment is stipulated to be $4,903.45. Defendant contends that it acquired title to the roadbed and embankment in the manner above indicated, and that damages for the land itself should be assessed as of the date of the commencement of the condemnation proceedings, or at any rate not before March, 1894, when it took possession of the property; while plaintiffs contend that it holds title to the roadbed and embankment, as well as the land occupied thereby, in virtue of the deed from the Union Pacific Railway Company to its immediate grantors; and that damages should be

assessed from the time the Union Pacific Company orig-
inally entered upon the land.    The trial court found that
defendant was the owner of the roadbed and embankent,
and that damages should be assessed as of date March 31,
1894.    Should we find that the improvements—the road-
bed and the embankment—belong to the plaintiffs, then
the decree awarding compensation as of date March 31,
1894, is correct, but to the amount allowed should be
added the value of this embankment.    On the other hand,
if that question is decided adversely to appellants, then
the question of the date at which compensation should be
awarded becomes material.    From the statement already
ma·e it will be seen that the case turns largely, if not en-
tirely, on the effect to be given the deed of the Union
Pacific Company under date of December 16, 1892.    In-
cident to that point is the effect to be given the decree of
the United States circuit court in the case of the Union
Pacific Company against the East Omaha Land Company
*et al.*, and the transfer by the latter company or the Neb-
raska Construction Company to the defendant.    The exact
terms of that transfer, taken from the records of the con-
struction company, were as follows: ".Whereas, an agree-
ment was made between the Omaha Bridge and Terminal
Railway Co., then known as the Interstate Bridge and
Street Railway Company, and this company, under date of
August ·st, 1892, wherein this company agreed to construct
and complete for use a bridge across the Missouri river be·
tween Council Bluffs, Iowa, and the lands of the East
Omaha Land Co., with a draw span 520 feet long, for a
double-track railway, on a permanent pivot pier, with de-
tailed specifications, according to plans, etc., and in said
contract the construction company did further agree to
procure a conveyance from the Union Pacific Co., of all
tracks, franchises, and rights of way on the lands of the
East Omaha Land Co., and it did further agree to make
certain connections between the tracks of the bridge com-

pany on the east side of the Missouri river and the tracks
of certain other railroad companies as in said contract
specified, and also to procure a conveyance of certain lands
as in said contract speci .ed; and whereas, this company
`as performed all its obligations under said contract; and
w. ·eas, the said Omaha Bridge and Terminal Co. has
caused to be delivered to this company one million of its
bonds, secured by a first mortgage, etc., and has delivered
to this company seventy-five hundred shares of its cap tal
stock and seventy-five hundred shares of the capital stock
of the East Omaha Land Co. in full payment of the consid-
eration of the contract hereinbefore mentioned, and as
payment for all the work done, material furnished, and
lands purchased and delivered:  Now, therefore, this com-
pany does hereby acknowledge complete and full satisfac-
tion of said contract, and does hereby authorize and direct
John R. Webster, general manager of this company, to turn
over and deliver to the Omaha Bridge and Termi-
nal Railway Co. all of said property, lands, tracks, and
equipment, together with all material on hand, and all
rights and franchises in connection with the same; to have
and to hold the same to the Omaha Bridge and Terminal
Company, its successors and assigns, forever.''

It will be noticed that this resolution, which was duly
adopted by the corporation, purports to convey only the
tracks, franchises, and rights of way on the lands of the East
Omaha Land Company, and that these plaintiffs were not
parties to the litigation between the Union Pacific Company
and the land company, nor were they in privity with either.
The roadbed in question was not built on lands belonging
to the East Omaha Land Company, but on the property of
the Nebraska Ferry Company, or A. W. Street, trustee,
and defendant's title thereto is doubtful, to say the least.
It admits that it does not own the land on which these im-
provements were made, and, of course, cannot trace title
to the ferry company or to Street.  The exact arrange-

ment under which the Union Pacific Company built the embankment is not shown. All that we have with reference thereto is the decree of the United States circuit court, to which we have already referred; and that, of course, is not binding on these plaintiffs. Neither would the contract between these two companies be binding on plaintiffs or their grantors, for they were not parties thereto. But we do not care to rest our decision on this ground, although defendant's title to the roadbed and improvements in question is extremely doubtful. The Union Pacific Company went upon the land in question knowing that it had no title thereto, and from the land itself made the embankment in controversy. It added some riprapping to hold the embankment in place, and put ties and rails thereon. It was not, perhaps, a trespasser, for it had the implied consent of the owners to enter and make the improvements. We are not prepared to say that, in the absence of a deed for the land on which the embankments were constructed, the Union Pacific Company could not enter upon the land and remove the ties and rails, and perhaps the stone hauled there by it, or that it could not transfer its rights to another railroad company, so that that company might proceed by *ad quon damnum* proceedings to acquire title to a right of way, under the statutes of this state, without paying the owner for these improvements. But the question before us is much broader than this. The Union Pacific Company, after erecting its improvements, made a deed of bargain and sale to the land on which the same was located to plaintiffs' grantors. This deed also contained covenants of special warranty, and was made, as the witnesses say, from whom we have quoted, to quiet the title to the right of way. True, the

1. ESTOPPEL    Union Pacific Company did not, through any
   by deed.    of its agents, make such representations; and
the case must turn on the effect to be given this deed. It is a familiar principle of law that no one shall be allowed

to dispute his own solemn deed; in other words, he is estopped by his deed from saying that he had no interest in the land at the time of his conveyance. *De Frieze v. Quint*, 94 Cal. 653 (39 Pac. Rep. 1, 28 Am. St. Rep. 151); *Stow v. Wyse*, 7 Conn. 214 (18 Am. Dec. 99); *Comstock v. Smith*, 13 Pick. 120 (23 Am. Dec. 670); *Logan v. Eaton*, 66 N. H. 575 (31 Atl. Rep. 13); *McFadden v. Allen* (N. Y.) 32 N. E. Rep. 21 (19 L. R. A. 446). This rule does not, of course, operate to preclude the admission of parol evidence to identify the property granted, nor does it, in a proper

2. DEED: parol testimony: admissible when.

case, estop the grantor from claiming that property not necessarily included in the grant was not intended to be conveyed. In other words, parol evidence is sometimes admissible to apply the description found in the grant to the land intended to be conveyed, and, in cases of uncertainty or ambiguity in the terms of the grant, to make certain that which can be made certain, and in a proper case to determine what are removable fixtures as between grantor and grantee. Neither of the first two rules or exceptions apply to this case. There is no ambiguity or uncertainty in the description contained in the deed from the Union Pacific Company, and the defendant does not claim that parol evidence was offered for the purpose of applying the description to the land in controversy. Its claim as we understand it, is: First, that parol evidence is admissible for the purpose of arriving at the intent of the parties, and, second, that it is admissible for the purpose of showing that the property in controversy was a fixture or improvement, which did not pass by the deed in question. No attempt was made in this case, or by any other action, to reform the deed hence that feature is out of the case. There being no uncertainty or ambiguity in the deed, parol evidence was not admissible for the purpose of showing the intent of the parties. To admit it under such circumstances would be contrary to well settled rules of law.

Was it permissible, then, to show that the roadbed was a fixture, and did not pass by the deed, in the absence of an express exception or reservation written into the deed itself? We think not. As to the embankment itself, it was not a fixture, no more so than a dyke or levee or a well put on the land. It was part of the land itself, and undoubtedly passed by the deed. As to the riprapping, we think the same rule applies. It might be, in a proper case, that the ties and rails would not pass, but here we think they did, and for this reason: If the Union Pacific Company had owned the land or right of way on which the embankment was erected, and had made the deed it did, we apprehend there would be no question about the entire property—embankment, ties, and rails—passing to its grantee. *Van Keuren v. Railroad Co.*, 38 N. J. Law, 165. The claim that the embankment, ties, and rails did not pass is bottomed on the thought that it had no title to the land or right of way covered by the deed. May it or its grantees or assignees show that it had no title to the land in the face of its solemn deed thereto? Surely not, for to permit them to do so would be to violate the rule of estoppel by deed to which we have already referred. In other words, to take the embankment in controversy out of the terms of the grant, the Union Pacific Company or its grantees must be permitted to show that this company had no title to the lands it sold to plaintiffs' grantors. This the rules of law will not permit. The doctrine of estoppel is a salutary one, and to establish the rule contended for by appellee would be to destroy the security of all land titles, and permit grantors, after solemnly affirming that they had title, to insist that they did not, although subsequent good-faith purchasers may have parted with their money, as in this case, on the strength of the integrity of the title. There are, as it seems to us, no two sides to this question.

3. SAME:

But appellee argues that the original agreement of settlement was made a part of the deed, and that it should be considered in arriving at the intent of the parties. There are two answers to this. In the first place, the deed refers to this agreement for its consideration, and the granting clause makes no reference thereto; second, the improvements were not made when the settlement was had, but were constructed thereafter, and the deed was made after the embankment was erected. As to the granting clause the deed speaks from its date, and the contract under which it was made became *funtcus officio*, except as it was embodied in the deed itself or referred to therein. Manifestly, the contract did not and could not refer to improvements not then in existence, and we have said, it is only referred to in the deed as furnishing the consideration therefor. To take the embankment out from under the operation of the deed it is necessary to show an exception or reservation, and this cannot be done by parol. *Smith v. Price*, 39 Ill. 28 (89 Am. Dec. 284.) It is true that in certain cases parol evidence is admissible for the purpose of showing the real consideration for the deed; but this rule cannot be employed for the purpose of varying its legal effect. *Dunbar v. Stickler*, 45 Iowa, 384; *Schrimper v. Railroad Co.*, 115 Iowa, 35, and cases cited. On the theory that parol evidence is admissible to show the true consideration, the grantor cannot introduce an exception or reservation which should have been embodied in the granting clause. See cases heretofore cited. Clearly, the deed must be construed with reference to its date, and it is not competent to ingraft a parol reservation or exception thereon. In none of the cases relied upon by appellee does it appear that the company constructing the roadbed had made a deed therefor to some other party, who was relying upon the terms of the grant; hence they are not to our minds in point.

4. SAME: when and what property passes by a deed.

It is not shown, as we have said, that plaintiffs were informed, before they acquired title and expended their money, that the Union Pacific Company was claiming that the roadbed and right of way should have been reserved from the grant. Indeed, Mr. Webster, who procured the deed from the Union Pacific Company, and who attempted to secure the corrected one, says that the company said nothing at any time indicating that it was its intention to reserve the roadbed at the time it executed the first deed. All that is shown in this respect is that the company said that, if a new deed was executed, it ought to reserve a right of way. This was not communicated to the plaintiffs, however; and, while they found the Union Pacific Company in possession of the embankment at the time they purchased, they did not pay out their money until the deed was obtained from that company. This adds strength to the doctrine of estoppel, although the company made no representations except those to be inferred from its deed.

There is no doubt of the general rule, relied upon by appellee, that one may erect improvements on the land of another which do not become a part of the real estate; and, were it not for the deed made by the Union Pacific Company, we would be inclined to agree with them in their conclusion that this embankment belonged to the Union Pacific Company, or its grantees, and that plaintiffs are not entitled to compensation therefor; but in the face of this solemn instrument it does not lie in the mouth of that company or its grantees to say that it had no title to the lands, and, therefore, that the improvements thereon did not pass by the deed. When a railroad company enters upon the land of another, builds a roadbed, places ties and rails thereon, they as a general rule, in the absence of abandonment to the owner, belong to the company constructing the same, or to its grantees or assignees, and the landowner cannot, in condemnation proceedings, have the

value thereof included in his award. This is familiar doctrine requiring no support from the authorities. But when that company makes a deed to the land on which the improvement is erected, which deed contains no reservation, it will not be permitted to show, for the purpose of eliminating the improvements, including the roadbed, that it had no title to the land it attempted to convey. Reduced to its last analysis, the question at issue is a very narrow one, which is clearly settled by the doctrine of estoppel. If the deed from the Union Pacific Company to Street and the Nebraska Ferry Company did not convey this embankment and trackage, it did not convey anything; and, if defendant is to prevail in this litigation, it must be on the theory that this deed is nothing more than waste paper. This it should not, for the most salutary reasons, be permitted to do. Doubtless, as between the Union Pacific Company and Street and the Nebraska Ferry Company, the embankment, and especially the ties and rails, was, before the execution of the deed, personal property, and might be said to be a trade fixture, under the doctrine announced in *Railroad Co. v. Nyce*, 61 Kan. 394, (59 Pac. Rep. 1040, 48 L. R. A. 241) and *Justice v. Railroad Co.*, 87 Pa. 28. But when the company undertook to grant the land on which these improvements are situated, and made no exception or reservation thereof, and did not undertake to remove the same within a reasonable time after it made the sale, its grantee or assignee cannot be heard to say that its deed was of no effect, and that it is entitled to the roadbed and improvements. Appellee has cited no case which runs counter to these rules and we do not think any can be found. On the other hand, our conclusions find support in the following among other cases: *Hunt v. Iron Co.*, 97 Mass. 279; *Meriam v. Brown*, 128 Mass. 391.

Suggestion is made by counsel that the Union Pacific Company and its grantees have always claimed to own the embankment in question. This is not verified by the

record. On the contrary, it is shown that plaintiffs have always since their purchase claimed to own the same, and have endeavored to get Webster ·to concede their claims. The reservations contained in the deeds from the ferry company and from Street are of no importance. They neither recognize nor affirm that a right of way exists over the lands in controversy; and defendants are not claiming that they have a right of way. The sole question with them is, shall ·they be compelled to pay for the embankment, etc., in addition to the land actually taken? We hold that they should pay for it, and, of course, disagree with the learned trial judge in his conclusions.

II. The second point barely needs mention. Having found that plaintiffs were the owners of the roadbed, and that defendant went into possession in March, 1894, the time fixed for the award of damages as found by the trial court, is manifestly correct. *Daniels v. Railroad Co.*, 41, Iowa, 52. Had we found with appellee, on the first point, that the roadbed passed from the Union Pacific Company, through the East Omaha Land Company or the Nebraska Construction Company, to the defendant, the second question would then have become important. It is sufficient to say in this connection that, if we had so found, it is clear that compensation should have been made as of the date of the original entry by the Union Pacific Company, in December, 1889, and the result in dollars and cents would be practically the same as under our present holding. If defendant has title to the roadbed in controversy, it is because it acquired the same as personal property immediately from the Union Pacific Company, and its entry must relate back to the time that company took possession of the lands and began its improvements thereon. *Daniels v. Railroad Co.*, 35 Iowa, 129; *Drury v. Railroad Co.*, 127 Mass. 571; *Railway Co. v. Ortiz*, 75 Tex. 602, (12 S. W. Rep. 1129); *Harbach v. Railway Co.*, 80 Iowa, 593. We place our decision,

5.  DAMAGES: when to be determined.

however, on the first point, and find that plaintiffs should
have been awarded the value of the roadbed, to wit,
$4,903.45, in addition to the value of the land; and plain-
tiffs may have judgment in this court, if they so elect, for
the value of the land actually taken, to wit, $5,310, and
the value of the roadbed,—in all, $10,213.45,—with six
per cent. interest thereon from March 23, 1894, down to
the time of the entry of the decree, and the further sum
of $1,000 attorney's fees, as allowed by the district court,
and the costs of suit both in the district court and upon this
appeal.—MODIFIED and AFFIRMED.