VESTA HAGENSICK, APPELLEE, V. TOBIAS CASTOR ET AL., APPELLANTS.

FILED JANUARY 19, 1898.   No. 7750.

1. **Estoppel by Deed:** QUITCLAIM.  The general rule is that an ordinary quitclaim deed vests only in the grantee such title or estate as the grantor was at the time of the execution and delivery of the deed possessed of; and if a grantor in such a deed subsequently acquires the title to the real estate thereby conveyed, that title does not inure to the grantee in the quitclaim deed.

2. ————: RECITAL OF ESTATE CONVEYED.  Whatever be the form or nature of the conveyance of real property, if the grantor therein sets forth on the face of such instrument by way of recital or averment, either in express terms or by necessary implication, that he is seized or possessed of a particular estate in the premises conveyed, then such grantor and all persons claiming under him are ever afterward estopped from denying that he was so seized and possessed at the time he made such conveyance.

3. ————: ————.  Such an estoppel operates upon the estate and binds an after-acquired title as between parties and privies. *Van Rensselaer v. Kearney*, 52 U. S. 297, followed.

4. ————: DESCRIPTIO PERSONÆ.  In 1887 George H. Ohler was absent from home and had been for several years, and his children, believing him dead, partitioned among themselves his real estate. They effected this by quitclaim deeds from one to another, each deed reciting that the grantor "being one of the three heirs of George H. Ohler." In 1891 Ohler died owning this real estate and it descended to his heirs, the three children who had already partitioned it. *Held,* (1) That the recital in the quitclaim deeds, "being one of the three heirs of George H. Ohler," was not a mere *descriptio personæ* of the grantor, but an assertion by such grantor that he was then an heir at law of Ohler; (2) that the grantors in said quitclaim deeds had by such recital estopped themselves and those claiming under them from asserting that they were not heirs of George H. Ohler in 1887, and estopped from asserting the title to the land which they acquired by his death in 1891, against the grantees in said quitclaim deeds and those claiming under them.

APPEAL from the district court of Saline county Heard below before HASTINGS, J. *Affirmed.*

The opinion contains a statement of the case.

*Griggs, Rinaker & Bibb,* for appellants:

The quitclaim deeds do not work an estoppel because they contained no covenants, and conveyed only the interest of grantors in the premises. (*Lavender v. Holmes,* 23 Neb. 345; *Holbrook v. Debo,* 99 Ill. 372; *White v. Brocaw,* 14 O. St. 339; *Gibson v. Chouteau,* 39 Mo. 536; *Gates v. Hunter,* 13 Mo. 365; 7 Am. & Eng. Ency. Law 10, 11; *Hanrick v. Patrick,* 119 U. S. 156.)

The quitclaim deeds work no estoppel, because the word "heirs," as used therein, evidently means children. (*Heard v. Horton,* 1 Den. [N. Y.] 165; *Conger v. Lowe,* 124 Ind. 368; *Levengood v. Hoople,* 124 Ind. 29.)

The truth that grantors were not heirs at the time they made their quitclaim deeds appears in the record without objection and by solemn admission and stipulation of all parties. There is therefore no estoppel by virtue of the deeds. (Bigelow, Estoppel [3d ed.] 298; 7 Am. & Eng. Ency. Law 5; *Pelletreau v. Jackson,* 11 Wend. [N. Y.] 110.)

*J. H. Grimm* and *Hastings & McGintie,* also for appellants.

*Halleck F. Rose* and *Webster, Rose & Fisherdick,* for appellee:

When a deed sets forth on its face by way of recital or averment that the grantor is seized or possessed of a particular estate, or where the seizure or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seized of such estate

at time of conveyance.   The estoppel works upon the estate and binds an after-acquired title between parties privies.   (Rawle, Covenants for Title [5th ed.] sec. 245; Bigelow, Estoppel [5th ed.] 396; 2 Herman, Estoppel, secs. 640, 647; *Van Rensselaer v. Kearney*, 11 How. [U. S.] 325; *Bush v. Cooper*, 18 How. [U. S.] 83; *French v. Spencer*, 21 How. [U. S.] 240; *Clark v. Baker*, 14 Cal. 629; *Root v. Crock*, 7 Pa. St. 378; *Bachelder v. Lovely*, 69 Me. 38; *Magruder v. Esmay*, 35 O. St. 231; *Lindsay v. Freeman*, 83 Tex. 264; *Hannon v. Christopher*, 34 N. J. Eq. 459; *Goodtitle v. Bailey*, Cowp. [Eng.] 597; *Nixon v. Carco*, 28 Miss. 414.)

The tenants derive title from a common ancestor, and having gone into a partition of the property on certain terms, by mutually releasing and conveying to each other certain allotments in severalty, the law annexes a warranty of title, from the fact that the transaction was a partition of a common estate, and as between the parties and privies this implied warranty is a complete estoppel against each of the other heirs to claim any estate in the portion set off in severalty to plaintiff.   (Bigelow, Estoppel [3d ed.] 346; 1 Washburn, Real Property 431, 432; *Tewksbury v. Provizzo*, 12 Cal. 21; *Morris v. Harris*, 9 Gill [Md.] 26; *Patterson v. Lanning*, 10 Watts [Pa.] 135; *Venable v. Beauchamp*, 3 Dana [Ky.] 321; *Feather v. Strohoecker*, 3 P. & W. [Pa.] 505.)

Where lands are conveyed by deed, which ordinarily operates only to transfer vested interests, such as a quitclaim, or deed of bargain and sale, but it distinctly appears on the face of the deed that it was intended to transfer any future or expectant interest which the grantor might acquire, equity will treat the deed as an executory agreement to convey, and compel the grantor to convey the subsequently-acquired interest.   (2 Story, Equity Jurisprudence [13th ed.] sec. 1040b; *Hannon v. Christopher*, 34 N. J. Eq. 467; *McWilliams v. Nisly*, 2 S. & R. [Pa.] 509; *Powers' Appeal*, 63 Pa. St. 443.)

36

RAGAN, C.

In 1875 George H. Ohler resided in Saline county, Nebraska, and was seized in fee-simple of a tract of land therein containing 280 acres. At this date Ohler left home and never returned, although he seems to have been heard from by members of the family from time to time. In June, 1887, his three children, Vesta Hagensick *née* Ohler, James Ohler, and Electa Wheeler *née* Ohler, partitioned among themselves the father's real estate. This partition was effected by quitclaim deeds executed by the children, one to the other, each of the deeds reciting that the grantor therein "being one of the three heirs of George H. Ohler." Each child took possession of that part of the real estate allotted to him under the partition. In 1891 the ancestor died, and soon after that two of his heirs, James Ohler and Electa Wheeler, conveyed to Tobias Castor by warranty deed all the real estate which the decedent owned in his lifetime, except eighty acres thereof. The Castor conveyance by its terms included the part of the decedent's estate allotted to Vesta Hagensick in the partition thereof made by the decedent's children in 1887. On the 8th of July, 1892, Castor deeded to one Rosamond B. Westervelt the lands conveyed to him by the two children, and on the same day Westervelt, by another conveyance, became invested with the title to the eighty-acre tract above mentioned which had been allotted to Electa Wheeler in the partition made of the father's real estate by his children in 1887. In the district court of Saline county Vesta Hagensick brought this action against Castor and others to have quieted and confirmed in her the title to the real estate allotted to her by the partition made thereof by Ohler's children in 1887. She had a decree as prayed and Castor and others have appealed.

1. The district court found, and the evidence sustains the finding, that the quitclaim deeds made by the children of George H. Ohler to one another in June, 1887, of his

real estate were made and accepted by said children with the purpose and intent of effecting among themselves a voluntary partition and division of the lands of their father, they then believing him to be dead, and believing that they were then seized of said lands as his heirs at law; that each of said children entered into the possession of the portion of the lands allotted to him by the partition made thereof and held and occupied such lands in severalty to the commencement of this suit; that in each of said quitclaim deeds made by said children the grantor therein recited that he or she was one of the three heirs of George H. Ohler; that by such recital such grantor intended to define the estate conveyed to be an estate of inheritance vested in him as an heir at law of George H. Ohler. As a conclusion of law the court found that the said parties who had executed said quitclaim deeds, and all persons claiming through or under them, were, by reason of the recital in said deeds that the grantors therein were heirs of George H. Ohler, estopped to dispute that assertion, and consequently were estopped from claiming the title to such real estate, which had descended to said parties, as heirs of George H. Ohler on his death in 1891.

Was this conclusion of the district court correct? We think it was. The general doctrine undoubtedly is that an ordinary quitclaim deed vests only in the grantee such title or estate as the grantor was, at the time of the execution and delivery of the deed, possessed of; and that if a grantor in such deed subsequently acquires the title to the real estate thereby conveyed, that title does not inure to the grantee in the quitclaim deed. (Compiled Statutes, ch. 73, sec. 51, and cases hereinafter cited.) The conveyance made to Vesta Hagensick by her brother and sister in June, 1887, of the real estate in controversy was a quitclaim deed; the grantors in that deed had no title to the real estate which it attempted to convey and, therefore, Vesta Hagensick acquired no title by that deed. In 1887 George H. Ohler was still alive, and his two children who conveyed a part of his real estate to

Vesta Hagensick were not then his heirs, and as such had no title to the real estate they attempted to convey; but the two children who made this conveyance to Vesta Hagensick subsequently thereto by the death of their father in 1891 became invested as his heirs with the title to two-thirds of all the real estate of which George H. Ohler died seized. In other words, the two children who executed the quitclaim deed to Vesta Hagensick subsequently acquired title to that real estate, and this title so subsequently acquired would not inure to the benefit of or vest in Vesta Hagensick, if the conveyance made to her by her brother and sister, and the contract on which such conveyance was predicated, was, and was intended by the parties thereto to be, nothing more than a quit-claim of any interest which the grantors therein possessed or were supposed to possess to the real estate conveyed. But the district court has found, and the evidence sustains it, that the conveyance made to Vesta Hagensick by her brother and sister was intended by the parties thereto to vest in her the title which the grantors in those deeds had to the land as heirs of their ancestor, they then believing him to be dead; and the conveyance made to Vesta Hagensick by her brother and sister is not only a quitclaim deed, but it contains the solemn recital or statement that the grantors in those deeds were then and there heirs of George H. Ohler. This statement is not, as counsel for appellants seem to argue, a mere *descriptio personæ* of the grantors. The statement is written in the body of the deed following the description of the real estate conveyed. Nor by any reasonable construction can the statement be construed to mean that the grantor was one of the children of George H. Ohler; but it is a recital, a statement, an asseveration, and representation of the grantor that he was then and there an heir at law of George H. Ohler; and this conveyance was accepted and acted upon in the belief that the statement made was true.

The question then is, can these grantors or those claim-

ing under them now be·heard to assert the fact that they were not then heirs of Ohler as against the representation made by them in their deed? We think the most respectable authorities in the country answer this question in the negative. A case which so answers the question under consideration, and in which it was most thoroughly considered, is *Van Rensselaer v. Kearney*, 52 U. S. 297. The court said: "On the part of the complainant it is insisted that the conveyance is a deed of bargain and sale, and quitclaim, without any covenants of title of warranty, and therefore could operate to pass only the estate for life of which the grantor was then seized; that it contains no appropriate words, when taken together, by force of which the subsequently acquired title inured to the benefit of the grantee, or those claiming under him, · or that can estop the heirs from denying that he had any greater estate than the tenancy for life; and that the deed purports on its face to grant and convey simply the right, title, and interest which the grantor possessed in the premises at the time, and nothing more.   *   *   * The general·principle is admitted, that a grantor, conveying by deed of bargain and sale, by way of release or quitclaim of all his right and title to a tract of land, if made in good faith, and without any fraudulent representations, is not responsible for the goodness of the title beyond the covenants in his deed.   *   *   * A deed of this character purports to convey, and is understood to convey, nothing more than the interest or estate of which the grantor is seized or possessed at the time, and does not operate to pass or bind an interest not then in existence. The bargain between the parties proceeds upon this view, and the consideration is regulated in conformity with it. If otherwise, and the vendee has contracted for a particular estate, or for an estate in fee, he must take the precaution to secure himself by the proper covenants of title. But this principle is applicable to a deed of bargain and sale by release or quitclaim, in the strict and proper sense of that species of conveyance;

and, therefore, if the deed bears on its face evidence that the grantors intended to convey, and the grantee expected to become invested with, an estate of a particular description or quality, and that the bargain had proceeded upon that footing between the parties, then, although it may not contain any covenants of title in the technical sense of the term, still the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him, in respect to the estate thus described, as if a formal covenant to that effect had been inserted; at least, so far as to estop them from ever afterwards denying that he was seized of the particular estate at the time of the conveyance." The court, after citing and reviewing the authorities, proceeds as follows: "The principle deducible from these authorities seems to be that, whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument by way of recital or averment, that he is seized or possessed of a particular estate in the premises and which estate the deed purports to convey; or what is the same thing, if the seizin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon the estate, and binds an after-acquired title as between parties and privies. The reason is that the estate thus affirmed to be in the party at the time of the conveyance must necessarily have influenced the grantee in making the purchase; and hence the grantor and those in privity with him, in good faith and fair dealing, should be forever thereafter precluded from gainsaying it. The doctrine is founded, when properly applied, upon the highest principles of morality, and recommends itself to the common sense and justice of every one. And although it debars the truth in the particular case, and therefore is not un-

frequently characterized as odious, and not to be favored, still it should be remembered that it debars it only in the case where its utterance would convict the party of a previous falsehood; would be the denial of a previous affirmation upon the faith of which persons had dealt and pledged their credit or expended their money. It is a doctrine, therefore, when properly understood and applied, that concludes the truth in order to prevent fraud and falsehood, and imposes silence on a party only when in conscience and honesty he should not be allowed to speak." This case expresses our views in far better language than any we are able to command. To the same effect see *Bush v. Person*, 59 U. S. 82; *Lessee of French and Wife v. Spencer*, 62 U. S. 228; *Clarke v. Baker*, 14 Cal. 612; *Magruder v. Esmay*, 35 O. St. 221; *Hannon v. Christopher*, 34 N. J. Eq. 459; *Wells v. Stickleberg*, 52 Neb. 597. Following the rule laid down in these cases, we hold that the grantors in the quitclaim deeds made to Vesta Hagensick, by reciting therein that they were then and there the heirs of George II. Ohler, have forever estopped themselves and all persons claiming under them from disputing that assertion. The decree of the district court is

AFFIRMED.