OMAHA BRIDGE & TERMINAL RAILWAY COMPANY V. DAVID C. WHITNEY, JR., ET AL.*

FILED APRIL 9, 1903.    No. 12,710.

1. **Use of Land by Railway Company: CONSENT OF OWNER.** Where a railway company, having no estate in land, places on it, with the knowledge and consent of the owner, an embankment, riprapping, ties and rails, and maintains and uses such track for its own purposes, without objection from the owner, such track remains the property of the railway company in the absence of any agree-

* Rehearing allowed.  Judgment modified.  See opinion, p. 399, *post*.

ment to the contrary and of any intention on its part to make such track appurtenant to the real estate.

2. **Implied Agreement.** Under such circumstances, an agreement by the licensor that the track shall remain the property of the railway company is implied. *Fischer v. Johnson*, 106 Ia. 181.

3. **Railway Company:** AGREEMENT: DEED: ESTOPPEL. Where the railway company, before constructing its track, has settled a dispute as to the boundaries with the owner of the land, by the terms of which settlement deeds are to be made by each party to the other of their respective holdings, the fact that such deed is not made until after the construction of the track, and by its terms conveys the land "and all appurtenances thereto belonging," will not prevent the railway company or its grantees from showing, as against the owner and his grantees with notice, the true state of the title, when the track was built; nor will such deed carry the ownership of the tracks, they not being expressly mentioned, and not being legally appurtenant to the owner's estate.

4. **Condemnation Proceedings:** DAMAGES: VALUE OF TRACK. In condemnation proceedings by the grantee railway company to obtain a right of way over the land, the value of the track should not be added to the owner's damages for the taking of the land, the railway company having remained continuously in possession, since the first construction of the track by itself and its grantor.

ERROR to the district court for Douglas county: JACOB FAWCETT, DISTRICT JUDGE. *Affirmed in part.*

*John C. Wharton, William Baird, Edgar A. Baird* and *Clair J. Baird,* for plaintiff in error.

*Frank H. Gaines, James E. Kelby* and *John A. Story,* contra.

HASTINGS, C.

The question in this case is the ownership of certain railroad embankments, riprapping, rails and ties of an agreed value of $3,979, which are upon the premises in East Omaha sought by the plaintiff in error to be condemned for its right of way. The track was originally laid in 1889 and 1890 by the Union Pacific Railroad Company. The riprapping was placed in 1891, and the Union Pacific Company operated the line until March, 1894, when the

plaintiff in error acquired it by assignment from the Union Pacific Company, through the Nebraska Construction Company, under a decree of the United States court, in connection with other portions of the same line, and in consideration of the sum of $85,000. In accordance with this decree, and upon the payment of the $85,000, the Union Pacific Company turned over to the bridge and terminal company about seven miles of trackage, and the bridge and terminal company went into possession, and have used and occupied it ever since. Neither the Union Pacific Company nor the bridge and terminal company made any claim to possessing the right of way over the premises on which this particular portion of track was located, and in May, 1900, the bridge and terminal company filed in the county court of Douglas county its petition, alleging that it was duly incorporated under the laws of the state of Nebraska as a railroad company, and for the purpose of constructing a railroad bridge over the Missouri river, and operating a railway line between the cities of Council Bluffs and Omaha, and that a part of its road was located over the land in question in these proceedings. Appraisers were appointed, who returned an assessment of the value of the land sought to be taken. An appeal was taken from their assessment by the owners of the lands, and a hearing had, and the value of the lands taken was assessed at $9,614.50. From this finding as to the value of the lands no appeal has been taken. The question as to the ownership of the railway trackage over it, for the securing of the location for which the condemnation proceedings were taken, was, by stipulation, separately tried, and the court found that the railway trackage, embankments and riprapping, of the agreed value of $3,979, was the property of the owners of the land, and not of the bridge and terminal company, and added to the damages returned by the jury the sum of $3,979. A motion for new trial having been overruled, from this last portion of the judgment error proceedings were taken, and the question now in this action is simply the ownership of this partic-

.ular portion of the railroad track, embankments and rip-rapping.

The title of the defendants in error to these premises is by virtue of deeds from the Council Bluffs & Nebraska Ferry Company and from Anthony W. Street, its trustee, made in December, 1892. Just previous to these conveyances, and as preliminary to them, the Union Pacific Company made in December, 1892, to Street, a deed reciting that there had been certain controversies between the Union Pacific Railroad Company, the East Omaha Land Company, the Council Bluffs & Nebraska Ferry Company, and Anthony W. Street, its trustee, with respect to the ownership of certain lands in the county of Pottawattamie and state of Iowa; that in a suit pending between the said parties in the circuit court of the United States for the district of Nebraska, to settle their respective interests in such real estate, the parties had settled their respective interests in such real estate, and determined the portions belonging to each, and in such settlement the Union Pacific Railroad Company had agreed to convey these premises in question to such persons as the ferry company and Street, its trustee, should designate, and that said Anthony W. Street, trustee, had been designated as such grantee; that the Union Pacific Company, therefore, in consideration of the sum of $1 and of the premises aforesaid, "granted, bargained, sold, demised and quitclaimed, and by these presents does grant, bargain, sell, demise and quitclaim," to Street, the lands on which this railroad track is situated. The deeds of the ferry company and of Street to defendants each contained the proviso, "subject also to right of way, if any, fifty feet wide, now occupied by tracks of Union Pacific Railroad Company."

It is clear that the railway company constructed this track, and did so after the settlement of 1889. It is clear that both the ferry company and Street were aware of such construction, and of the presence of the railroad track upon these premises, and the continuance in their use by the Union Pacific Company. They discontinued their in-

junction proceedings against such use of their land as a part of the settlement of 1889. The assignment of the Union Pacific Company's interest in this trackage to the East Omaha Land Company was pursuant to a decree of court, as stated before, and on the same day the East Omaha Land Company assigned its right in the trackage to the Nebraska Construction Company, which at once assigned to the bridge and terminal company, plaintiff in error.

The question presented, therefore, is simply, whether or not, after the settlement of the "divers controversies and disputes" between the Union Pacific Company and the East Omaha Land Company and the Council Bluffs and Nebraska Ferry Company, in 1889, and after the making of the deed by the Union Pacific Company in 1892, it still retained its ownership of 1,251 feet of trackage, embankments and riprapping on this land which purported to be conveyed by the deed. If the deed conveyed the track to Street, as it assumed to convey the land on which it was situated, then Street's deed to defendants carried the track to them, and their judgment for its value is right.

It is true that neither party will quite admit that this is the sole question in the case; or, rather, after doing so, each seeks to indicate a line of retreat. The plaintiff, after admitting that this land in question is embraced within the limits of the specific description in the deed of the Union Pacific Company to Street, urges that it is excluded by the recital that the conveyance is of certain lands "in Pottawattamie county, in the state of Iowa," whereas these lands are in Nebraska. It seems unnecessary to discuss this contention. The specific description will control the general recital. There seems no doubt as to the intention of the parties as gathered from the instruments and the facts to which it is to be applied.

The defendants urge that the decree under which the trackage was assigned to the plaintiff, relates to trackage on "lands of the East Omaha Land Company"; that the decree found the $85,000, in consideration of which the

assignment was made, was the amount of a lien held for expenditures by the Union Pacific Company on lands of the East Omaha Land Company in laying tracks under a contract for the latter company's accommodation. But they admit that this track in question is specifically included in the description. They admit that the track was laid under the Union Pacific's contract with the land company, which included an agreement by the latter to furnish right of way. The decree and assignment were evidently a settlement of the entire transaction, and included in specific terms the transfer of any rights the railroad company had in this piece of track. In the case of this decree and assignment, as in that of the deed to Street, the specific description and the intentions of the parties should control a general recital.

One other point made by the plaintiff, aside from the construction of this deed, should also be noted. This is the claim that in certain cases where a railroad company has without rights entered upon land and put down its track, on subsequently entering proceedings to condemn it, takes the premises as they were when it entered upon them. Its right of eminent domain clothes it with a *quasi* public character, and the evident use and purpose of the taking prevents any presumption of an intention to dedicate as a part of the owner's realty the things attached to the soil. It seems clear that such is not this case.

In this case, the track was laid under an agreement with the East Omaha Land Company and for its accommodation, and not with a view to acquiring any right of way by the railroad company. The right of way was to be furnished by the land company, and the railroad retained the ownership of its track, as the $85,000 decree shows. It would not seem that under such circumstances the right of seizure for public purposes would apply.

In any event, any inchoate right derived from taking the land and laying track upon it would pass under this deed of December, 1892, to Street, if the terms of the deed and the circumstances, taken together, indicate such an inten-

tion. We, therefore, do not hesitate to say that the sole question is whether or not the track in question went to Street, as trustee, by the railroad company's deed of December, 1892. If it did, of course, there is no question that it went to defendants by Street's deed to them, notwithstanding the express proviso in Street's deed to them, "subject also to right of way, if any, over said premises fifty feet wide, now occupied by tracks of Union Pacific Railroad Company." On the other hand, it seems that this proviso was ample to preserve to the railroad company and to its grantee, the plaintiff, any rights which, under all the circumstances, the railroad company retained as against Street.

The trial court in this present case held that the deed conveyed to Street all the rights of the Union Pacific Company, including everything which was attached to the soil, inasmuch as the deed made no reservations. Plaintiff in error claims that the deed was made merely pursuant to the settlement of 1889, and that the track was laid after the settlement was completed; that the railroad company intended, as the recitals of the deed and the circumstances of its making show, merely to acknowledge that it had no interest in the land, and did not mean, and was not understood to mean, to abandon its claim to the trackage, embankments and riprapping, which had been built at the Union Pacific Company's expense, with Street's full knowledge and concurrence.

The identical question here was before the Iowa supreme court in *Van Husen v. Omaha B. & T. R. Co.*, 118 Ia. 366, 92 N. W. 47. The portion of this same track really lying in the state of Iowa was held to have passed to Street under the railroad company's deed of December, 1892, and from him to the defendants. This conclusion is reached on the ground that the description in the deed does not disclose any ambiguity; that its terms are clearly sufficient to include the track, embankments, and riprapping, which are all appurtenant to the land, and therefore no evidence can be adduced to show any other intent than to include them.

It is held that the embankment thrown up out of the soil itself was certainly a part of the real estate. The ties and rails and the riprapping are distinctly and strongly attached to the land. It is by the Iowa court conceded that where such materials are attached by one not the owner, they do not, in a proper case, become part of the realty. Here it is found by the Iowa court that they do, because they must, as against one who conveys that land together with all "appurtenances hereunto belonging," be held to pass in the absence of any reservation.

The Iowa court grants the doctrine that one who, by sufferance of the owner, erects improvements for his own use on the land of another, retains their ownership in the absence of any restricting condition, and may remove them, or, if a railroad company, may institute condemnation proceedings, and acquire the land without paying the owner, who never had a right in them, for their value. But it finds that such doctrine introduces no reservations into a deed. It finds the question at issue a very narrow one, and wholly settled by the doctrine of estoppel. It says that the railroad company's deed, if it did not convey this road-bed, conveyed nothing, and neither it nor its grantees should be permitted to claim this. It concedes that but for the estoppel in this deed the Union Pacific Company and its grantees would be at liberty to claim this embankment, track and riprapping so far as it consists of material brought there by the company, and is the result of its efforts, as personal property. *St. Louis, K. & S. W. R. Co. v. Nyce,* 61 Kan. 394, 59 Pac. 1040, 48 L. R. A. 241; *Justice v. Nesquehoning V. R. Co.,* 87 Pa. St. 28.

The Iowa court finds the reservations in the deeds of the ferry company and of Street of no importance, as they neither recognize nor affirm a right in the Union Pacific Company. Evidently, they are of no importance if the main thesis of the Iowa decision is allowed, namely, that the deed of 1892 left no rights in the Union Pacific Company as regards this portion of the tracks it was using and continued to use. If, however, there was no such estoppel

as regards Street wrought by the deed to him against the railroad company's claiming an ownership of the track, it would seem that the acceptance of these subsequently made deeds would prevent defendants from claiming more rights than he had.

We entirely agree with the Iowa court that the question here turns upon the effect of this deed. We entirely disagree as to the particular estoppel which defendants may rely on. A deed which recites that it is made in consideration of a previous agreement that the maker should be deemed to have no title to the lands purporting to be conveyed, can hardly constitute an estoppel against the grantor's asserting, as against the grantee, that between the time of making the agreement and that of executing the deed he had no title, especially when in fact he never had one.

The agreement of 1889 does not, in terms, say that the railroad company had no title. It does, however, recite that in settlement of litigation over the title and boundary of lands the three parties have mutually agreed to convey certain portions to each other. The making of this agreement certainly was an abandonment of any claim or title on the railroad's part to this land. As against Street, who was a party to the agreement, it was certainly at liberty thereafter to say that any improvement put by it subsequently on the land with his knowledge and consent was not so placed by it as owner, and did not become appurtenant to the soil.

Defendants are in no better position than Street. The railroad company was in possession of its improvements. In this state it has been held that the continued possession of a grantor is notice to the world of any interest he still retains in the land, even contrary to the express recitals of his deed. *Kahre v. Rundle,* 38 Neb. 315.

The reservations in the deeds of defendants expressly told them that their grantor was not covenanting against claims of the railroad company, and that defendants were getting only such rights as Street and the ferry company

actually had to that portion which the railroad company was occupying.

We are constrained to think that as against this deed, which recites that it is made pursuant to and in consideration of an agreement relinquishing all title to this land, which was made in 1889, the railroad company was at liberty to set up its ownership of improvements made by Street's sufferance after the agreement, although they were not reserved. They were made at a time when the railroad company was recognized by all parties to have no interest in the land. They were made distinctly for the maker's own purpose, and remained wholly under its control. While physically appurtenant to the soil, they were not so legally, and consequently did not pass with the subsequent deed made pursuant to the settlement, in which they are not in express terms either included or reserved. That Street so understood is clear from his reservations, which apprised the defendants that these were the railroad company's tracks. To hold that this deed to Street estops any one from asserting that between 1889, when the agreement was made, and December, 1892, the date of the execution of the deed, the railroad company held no title to this land, is to "stick in the bark" of the doctrine as to estoppel by deed. This deed is anything but an assertion of title on the railroad company's part during that time. Whatever effect is to be given to the surrounding circumstances and the situation of the subject matter of a deed in determining the intentions of its parties, it is clear that the ownership of these improvements must become legally appurtenant to Street's estate in the land before his conveyance to defendants can of itself vest them with such ownership. We are clear that it never became so appurtenant, and that there are no facts shown in the record that estop plaintiff from so claiming in this proceeding.

It is recommended that so much of the trial court's action as added the agreed value of these improvements, to wit, $3,979, to the judgment, be set aside and vacated, and that the judgment be affirmed for the amount found by the

jury as the value of the 2.87 acres of land taken, to wit, $9,614.60.

KIRKPATRICK and LOBINGIER, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, so much of the trial court's action as added the agreed value of these improvements, to wit, $3,979, to the judgment, is set aside and vacated, and the judgment affirmed for the amount found by the jury as the value of the 2.87 acres of land taken, to wit, $9,614.60.

AFFIRMED IN PART.

The following opinion on rehearing was filed April 21, 1904. *Former judgment modified:*

1. **Eminent Domain:** AWARD: VALUE OF IMPROVEMENTS. Ordinarily, when a railroad company enters upon land of another and constructs a road-bed and tracks thereon, and occupies the land for right of way purposes, and thereafter condemnation proceedings are had to appropriate the land on which the road-bed is constructed, under the law of eminent domain the landowner can not in such proceedings have the value of such improvements included in his award.

2. **Agreement With Third Parties:** PRIVATE USE. Where, however, such improvements are made on the land of another under a contract, arrangement or agreement with third parties, to be used for private purposes, the law relative to the seizure of property for a public use does not apply.

3. **Determination of Rights.** The rights of parties in such a case are to be measured and determined by legal principles generally applicable to improvements in the nature of trade fixtures by a tenant or licensee in the possession and use of the real estate on which the improvements are made.

4. **Road-bed and Track:** DEED. A road-bed or embankment built out of the soil, and with riprapping for its protection, on which ties and rails are laid for use as a railway-track, is not an improvement placed upon land in the nature of a trade fixture, but is a part and parcel of the land itself, and where there are no exceptions or reservations will pass by a deed of conveyance as does the real estate on which constructed.

5. **Estoppel by Deed.** Whatever be the form or nature of the conveyance of real property, if the grantor therein sets forth on the

face of such instrument, by way of recital or averment, either in express terms or by necessary implication, that he is seized or possessed of a particular estate in the premises conveyed, then such grantor and all persons claiming under him are ever afterward estopped from denying that he was so seized and possessed at the time he made such conveyance. *Hagensick v. Castor*, 53 Neb. 495.

6. **Eminent Domain:** DEED: ROAD-BED: TIES AND RAILS: FIXTURES. A railroad corporation, under an agreement with a land company to furnish the latter certain trackage facilities, entered upon land belonging to a third party and constructed a road-bed and railway-tracks thereon, and occupied and used the same as a licensee. Afterwards negotiations were entered into for the sale of the real estate, a part of which was thus occupied, by the owner to a purchasing syndicate. During the negotiations a deed for the land on which the improvement was made was requested and obtained from the railroad company, which was executed and delivered so as to consummate the sale, and in pursuance of a prior agreement with the landowner, in settlement of existing controversies over land boundaries, and which conveyance contained no reservation or exception, and ran to the owner, who in turn conveyed to the purchasing syndicate. *Held*, (1) That in proceedings begun thereafter by those claiming under and through the railroad corporation to condemn a right of way along where such embankment was constructed, the title to the embankment or road-bed thus constructed had passed by such conveyances, and that the owners of the land were entitled to recover the value of the road-bed in such proceedings; (2) that the ties and rails constituting the railway-track had not, under the circumstances disclosed in the record, lost their character as personal property in the nature of removable trade fixtures, and remained the property of the railroad company and those claiming under it, the value of which should not be included in the award to the landowners in such condemnation proceedings.

HOLCOMB, C. J.

This cause is submitted on rehearing. The object of the action begun in the lower court was to condemn real estate, for right of way purposes, belonging to the defendant in error, a syndicate owning land in East Omaha. On the right of way sought to be condemned, there existed at the time an embankment of earth thrown up for a road-bed, with riprapping to protect it from the ravages of the Missouri river, and overlaid with ties and rails, thus con-

stituting a completed railroad-track. The road-bed had been constructed by the Union Pacific Railroad Company under an agreement with the East Omaha Land Company, for the purpose of furnishing trackage facilities in that vicinity. The bone of contention is the ownership of the road-bed thus constructed, and whether in the condemnation proceedings the plaintiff in error, the Omaha Bridge and Terminal Company, sha'l be obliged to pay to the owners of the real estate the value of the improvements thus constructed, which has been agreed upon by stipulation, in addition to the value of the land taken, as if no such improvements had been placed thereon.

In the former opinion, formulated by one of the commissioners, it was held that the syndicate was not entitled to recover the value of the road-bed, ties and rails overlying the same, as an element of the damages sustained by reason of the appropriation of the real estate. *Omaha B. & T. R. Co. v. Whitney, ante,* p. 389. The conclusions heretofore reached run counter to an opinion of the supreme court of Iowa shortly before handed down in a case between the same parties and involving an identical state of facts, and calling for the application of the same principles of law. *Van Husen v. Omaha B. & T. R. Co.,* 118 Ia. 366, 92 N. W. 47. The anomalous condition in which the litigants find themselves by reason of these two decisions does nothing more than to perhaps emphasize the fact that the courts sometimes err, as does fallible, mortal man in other fields of human activities. Because of the different conclusions reached by the two opinions referred to, we have felt it incumbent upon us to give to the controversy more than the usual degree of investigation and consideration.

Our attention is earnestly challenged by counsel for owners of the land to the proposition that in the former opinion there was a failure to give to the deed of the railroad company to their immediate grantor, which was executed after the railroad-track had been constructed by that company, the weight and importance, the nature and

character of the instrument and the circumstances surrounding its execution and delivery, demanded. It is urged, with apparent sincerity and much plausibility, that the legal status of the parties is to be controlled and determined almost wholly by this instrument, which, it is asserted, conveyed unreservedly and without exceptions or qualifications the full and absolute right and title of the railroad company in and to the disputed property, and every part thereof, to the grantor of the syndicate, and that the railroad company and those claiming under and through it, including the bridge company, the defendant in error, are estopped and can not be heard to say that the railroad company did not have title to the road-bed when it made its said deed of conveyance, nor to deny that all interest and property rights therein passed by such conveyance. It is urged upon us that at the time of the negotiations for the purchase of the land by the syndicate, a part of which it is sought to have condemned, and on which the road-bed is constructed, before the negotiations were consummated, and as a condition upon which the sale was made, a conveyance such as was made was demanded by the syndicate; and that when executed in pursuance thereof, without exception or reservation, the grantees relied upon the deed as conveying the full and absolute title to the real property included therein, and every part thereof, and the appurtenances thereunto belonging, and that, relying upon the muniments of title thus shown, they purchased the real estate, the embankment, and riprapping thereon, constituting the road-bed now in controversy, and that the railroad company and the bridge company, as its successor in interest, are, under the circumstances, barred and estopped from denying that the railroad company had no title to the real property thus attempted to be conveyed, and did not in fact convey its title and interest herein, including the said embankment or road-bed.

The former opinion proceeds upon the theory that the railroad company had constructed the road-bed in controversy under an agreement with the land company for

trackage facilities on lands not its own, and that such track, including the road-bed or embankment, notwithstanding the deed mentioned, remained the property of the railroad company, and that the improvement thus made, which in fact was appurtenant to the real estate on which located, yet legally it was not so appurtenant, and remained the property of those constructing it, and was owned and occupied by them as a licensee under an implied agreement with the owner of the land that it should remain the property of the railroad company, and because thereof, in the condemnation proceedings, the value of the track, including the embankment and riprapping, could not be recovered by the owners of the realty as a proper element of damages, in determining the value of the land taken for right of way purposes. It is also held that the railroad company never having been in fact the owner of the real estate described in the deed of conveyance, or, if it ever was, it had, before the construction of the road-bed in controversy, relinquished its right and title thereto under an agreement hereafter to be noticed, so that its conveyance by deed of the real property on which the track is constructed amounted to no more than a release and' quitclaim of title, and that under all the circumstances it, or those claiming through it, were not estopped from denying that it had title, nor from showing the true situation with respect to the ownership and title to the real property, and to the improvements placed thereon by the construction of the railroad-track.

The facts, briefly stated, as gleaned from the record, are these: In 1889 the land now owned by the syndicate was claimed by one Anthony W. Street for himself, or as trustee for the Council Bluffs & Nebraska Ferry Company. At that time the railroad company, under a contract, agreement or arrangement with the East Omaha Land Company, undertook to furnish for the latter company certain trackage facilities to and over its own lands in East Omaha; the land company to furnish title to the lands upon which the tracks were to be laid. The boundaries

of the lands over which the tracks were to be constructed appear to have been in controversy. When construction work was begun, Street and the ferry company began an action to enjoin the railroad company from constructing a road-bed and laying its tracks on the lands claimed by the former, and at the same time began an action in the federal court against the land company, the object of which was to have adjusted the disputed boundaries, and to quiet title to the lands claimed by the plaintiff in that action. From what followed, it is obvious that a tract of real estate lying in East Omaha, on each side of the Iowa and Nebraska boundary line, was claimed in separate parts by the railroad company, the land company and the ferry company, or Street as its trustee. It is not made to appear what particular tract included in the whole was claimed by each or either of the contestants. An agreement was entered into by the three parties whereby a settlement and final adjustment of all the controversies growing out of the conflicting claims was had, and for an adjudication of which the suits mentioned were instituted. A duly executed contract was entered into, under the terms of which certain portions of the real estate in controversy, as therein described, were by the others to be conveyed to each of the respective parties, the suits dismissd, and a release given of all damages on account of the commencement of the same. The land company and the ferry company agreed to make their separate deeds for certain lands therein described to the railroad company. The railroad and the land company agreed to make their separate deeds to the ferry company of certain of the lands as therein described, this part of the agreement to convey describing the land on which the road-bed and embankment now in controversy was constructed. The land company agreed to make its deed to other of the land in controversy to the ferry company or a trustee for the use and benefit of its stockholders, and the ferry company agreed to make to the land company a deed for certain other of the land in controversy; the agreement for these several deeds of convey-

ances manifestly covering and including all of the lands in controversy to which either of the parties laid any claim of title when the injunction suit and the suit to quiet title were begun. After the execution of the agreement mentioned, the railroad company resumed the construction of the road-bed and track under its agreement with the land company, the part in controversy being constructed on the land which by the tripartite agreement belonged to and was to be conveyed to the ferry company or Street, its trustee; such construction work continuing from time to time until 1890, when it was completed, and since which a railroad-track has been maintained thereon. In 1892 Street sold the land to the syndicate, who are defendants in error. In consummating the sale a deed was required from the Union Pacific Railroad Company, which was executed and delivered to Street, and Street, in turn, conveyed to the syndicate. At the same time the East Omaha Land Company conveyed, by deed in all essential features the same as the railroad company's, the land in controversy, with other lands, direct to the purchasing syndicate. The rights of the syndicate are, therefore, such as it acquired by its purchase from Street, which included whatever title he held in his own right or as trustee, including those rights which he acquired from the railroad company by its deed above referred to, and also whatever rights were transferred by the deed of the land company to the syndicate, executed and delivered at the same time.

Thereafter, in 1894, by a decree of the federal court in an action on the contract between the land company and the Union Pacific Railroad Company, the land company was adjudged to be the owner of the improvements made by the railroad company in its construction of the trackage facilities referred to under its contract with the land company, subject to a lien in favor of the railroad company for $85,000, which was paid by the land company, which thereupon became possessed in its own right of the property in controversy in that action. The decree, as we understand it, could not undertake to nor did it adjudicate title to

lands or any interest therein, but only those property
rights arising out of the construction of the railroad-tracks
under the contract between the litigants, which was treated
as personal property in the nature of improvements or fix-
tures on real estate. The syndicate was not a party to the
action, and, of course, not bound by the adjudication, so
far as its rights and interests in the property are con-
cerned. The bridge company's rights in the premises were
acquired from the East Omaha Land Company after the
litigation last referred to.

What, then, in view of what has been said, are the legal
rights of each of the litigants, how are they to be measured,
and what legal principles may we properly invoke in the
determination of the controversy?

The bridge company contends that a fair construction of
the several contracts of the parties interested, with a view
of ascertaining the true intention and meaning thereof,
leads to the conclusion that the railroad embankment, as
property, has never passed to the syndicate owners of the
land on which located, and that such improvements were
at the time of the commencement of the condemnation
proceedings in the nature of trade fixtures, which did not
pass by the conveyances under which the syndicate claims,
but were acquired by the bridge company by the several
transactions referred to, and as such were no part of the
real estate sought to be condemned, and for the payment
of which the company is not legally liable. On the con-
trary, the syndicate contends that such property was a
part of the real estate purchased, or appurtenant thereto;
that it is a purchaser for value, relying, as it had the right
to do, on the terms of the grant from Street and his im-
mediate grantor, the railroad company, as well as the deed
from the land company, all of which were without reserva-
tion or exception, and that it is in the attitude of a *bona
fide* purchaser, without notice, of the real estate, including
the appurtenances thereunto belonging, which included
the property in controversy. It is said in the former opin-
ion, and, as we think, correctly, that the railroad company,

in entering upon the land and constructing the road-bed and tracks under the agreement with the land company, was not doing so with a view of exercising any of its powers under the law of eminent domain. Its operations in regard to such improvements were the same as those of a natural person, and any rights it acquired thereby for itself or for the land company are to be gauged and determined as though the improvement was of some other character, and to which the rules of seizure and appropriation of property for public purposes had no application. The rule, no doubt, is that a railroad company, when it enters upon the land of another, constructs a road-bed, and places its ties and rails thereon, and occupies the land for right of way purposes, has created property which would inure to the benefit of and belong to the company thus constructing it, or to its grantees, and a landowner could not, in condemnation proceedings, have the value of such work and improvement included in his award.

It is obvious in this case that the railroad company, when it entered upon the land which under the tripartite agreement belonged to Street, and constructed the embankment and riprapping constituting the road-bed in controversy, did so as a licensee. The consent of Street, the owner, to the making of such improvements, will, under the circumstances, be inferred. An implied agreement arises, by operation of law, to the use of the improvement thus made during the existence of the license, and to a removal thereof, in the event the property is susceptible of removal, at the termination or revocation of the license. Had the agreement of 1889 constituted the executed contract between the parties thereto, or had deeds in pursuance thereof been at once executed and delivered, it seems to us entirely clear, upon principle and authority, the right of property in the road-bed and tracks would remain in the parties constructing, using and occupying the same, and would not have passed by the deed evidencing their title to the real estate on which located, and should not be included in the award for the land taken in the con-

demnation proceedings in the case at bar. In the deed from Street to the syndicate is found the following recital: "subject also to right of way, if any, over said premises fifty feet wide now occupied by tracks of Union Pacific Railroad Company." This was sufficient to put the purchasers on inquiry as to the rights of the railroad company to property then occupied and in use by them, whether as a licensee or otherwise, and the rights of the grantees would be no greater than those of their grantor, Street. But no such deed had then been executed. The railroad company ostensibly had some rights to the improvements and to the occupancy of the railroad-tracks, notice of which was given by its possession and use thereof. The prospective purchasers had knowledge of these facts. They refused to buy until the railroad company should convey to them or their grantor all of its rights and title to the land and its appurtenances. Thereupon the deed was executed and delivered by the company, purporting to grant all the real estate described therein, together with all appurtenances thereunto belonging. It is obvious that the syndicate relied upon the conveyance from the railroad company to their grantor as passing title to the very property that is in controversy. This is testified to positively by the two chief actors in the negotiations, one of whom represented the purchasing syndicate, and the other the sellers. Again, it is testified that because of some slight inaccuracy in description, the deed executed by the railroad company was returned to it for correction. It was then remarked by the legal representative of the railroad company that there was no particular objection to making a new deed, but, it appearing that no reservation of a right of way had been made in the deed executed, the company ought to reserve the right of way in the requested new deed. The representative of the owners of the land, not wishing that any reservation should be made in the deed, after some further talk, accepted the old deed as executed, because, as he puts it, the representative of the syndicate would not take the land with the railroad dividing it. The con-

veyance of Street to the syndicate, in which the deed recited that it was made subject to a right of way, if any, fifty feet wide, can scarcely mean more than that the grantor was desirous of absolving himself from any possible liability or litigation in consequence of the land which he was conveying being encumbered by the railroad tracks. It is apparent that whatever title thereto which passed by the deed of the railroad company to Street of necessity inured to the benefit of the purchasing syndicate, who might rightfully look beyond their own deed, and to that instrument, in determining the nature and extent of the title secured through the then owner. The proof further shows that the bridge company, several years after the purchase by the syndicate, on more than one occasion, by correspondence with the owners of the real estate, disclaimed any right or interest in or to the road-bed or embankment, and offered to remove therefrom the tracks—that is, the ties and rails—whenever requested so to do, upon the giving of sixty days' notice, or in the alternative, to, in the exercise of eminent domain, acquire title to a right of way on which the property was located by proceedings in condemnation.

From what has been said we are not prepared to concede the correctness of the position of counsel for the bridge company to the effect that a fair construction of the contracts under which the parties claim, in the light of surrounding circumstances, and with a view of ascertaining the true intentions of the parties thereto, warrants the inference that the property made up of the road-bed or embankment has never lost its character as personalty in the nature of trade fixtures, and was never acquired by the several conveyances of real property under and by virtue of which the syndicate claims title. As to the deeds of conveyance executed by the railroad company and by the land company in the execution of the prior contract, and to bring about a consummation of the sale of the lands therein described to the purchasing syndicate, bearing dates December 15 and 16, 1892, they both purport to

convey all present interest in the realty described therein, and the appurtenances thereunto belonging. They grant, bargain, sell, remise and quitclaim the real estate and appurtenances to the grantees and their heirs, so that neither of the grantors, nor any person claiming in their name and behalf, shall or will hereafter claim or demand any right to the premises or any part thereof. And it is especially covenanted that the premises are free from any incumbrances placed thereon by the grantors, and that they covenant to warrant and defend the title against any and all persons claiming under or through them. There were no reservations or exceptions of any character contained in either of the two deeds. The consideration named was the premises recited in the prior agreement and its fulfillment, and the sum of one dollar. The consideration, of course, is open for inquiry by parol testimony, but not so the written contract in respect of the property conveyed, and the nature of the title and estate passing to the grantee. The written contract must, in respect of these matters, speak for itself. At the time of the execution and delivery of the deed, the improvements in controversy were upon the land therein described.

It is contended with much earnestness that the deed of the railroad company is to be construed in the light of the prior agreement, of which it became the executed contract, and as being merely a fulfillment of that agreement, and as passing only any apparent or possible interest and estate in the land held by the railroad company at the time of the making of such agreement, and nothing further or greater, and that it was never in the contemplation of the parties that the road-bed and tracks passed by the conveyance, but, on the other hand, they remained and were in fact personal property belonging to the company, and in its use and possession as a licensee, with an implied agreement of the right of removal on the termination of the tenancy. We can not but regard the conveyance as in fact and in legal contemplation transferring to the grantee named the after acquired interest of the railroad company of all

that part of the improvements placed on the real estate
in its construction of the road-bed, as a licensee, which
may fairly and properly be denominated real estate or
appurtenances attached thereto.    The deed, as made, and
under the circumstances, performed the office of an ex-
ecuted contract in fulfillment of the prior agreement, and
in the eye of the law, was a present conveyance of after-
acquired rights in the real estate conveyed.    The situation
and legal relations of the parties affected by the convey-
ance were, as it seems to us, the same as though the agree-
ment had been executed by the making and delivery of a
deed in pursuance thereof, and thereafter the railroad
company had entered upon the land as a licensee, and had
constructed the embankment in controversy, and, upon
the negotiations for the purchase of the land, the pur-
chasers demanded and were given an instrument of con-
veyance such as was given in this case.    Under such cir-
cumstances, can it be doubted that the railroad company
and those claiming in privity with it, would be estopped
from claiming that title to the road-bed did not pass by
such conveyance?    We think the views expressed by the
Iowa supreme court as to the nature of the property de-
nominated the road-bed or embankment are correct, and
should, in a large measure, determine the question of its
inclusion or exclusion in the execution of the deed by the
railroad company.    "As to the embankment itself," says
that court, "it was not a fixture, no more so than a dyke
or levee or a well put on the land.    It was part of the land
itself, and undoubtedly passed by the deed.    As to the
riprapping, we think the same rule applies."    *Van Husen
v. Omaha B. & T. R. Co.*, 118 Ia. 366, 378.    It is true that,
in a sense, and in a proper case, a road-bed constructed on
land belonging to another, in an action to condemn a
right of way, might be said to be not legally a part of the
land, or at least not such part of it as would give to the
owner the right to have its value included in the award
to which he was entitled for the appropriation of his land
for public purposes.    As we have seen, however, in the case

at bar, this rule has no proper application. Nor are we prepared to say that, upon principles analogous to the one just adverted to, when an improvement such as the one under consideration had been made by one acting as a licensee, and used, with the implied consent and agreement of the owner, as his own, and later on such licensee, or those in privity with him, were authorized to invoke the powers of eminent domain, and appropriate as a right of way, or for other public use, the land upon which the improvement was constructed, that, in awarding compensation for the appropriation of such land, the improvement so made and used and the value thereof could properly be included or considered in estimating the damages sustained. In the present case, however, we have yet another and a different question to deal with. The deed of the railroad company was made after the improvements were constructed by it. By no manner of reasoning can it be said that the terms of the grant did not include and convey the embankment on the land described therein, either as a part and parcel of the realty or as an appurtenance thereto. It must, for obvious reasons, be construed according to its terms and date. To do otherwise is by parol to engraft exceptions and reservations thereon which is clearly inadmissible. *Smith v. Price,* 39 Ill. 28; *Van Husen v. Omaha B. & T. R. Co.,* 118 Ia. 366. Even if the deed had been executed and accepted in performance of the prior contract, with no other element properly to be considered, the contract itself became thereby *functus officio,* and thenceforth the rights of the parties are to be measured and determined by the deed, and not by the contract; the presumption being that the deed gives expression to the final purposes of the parties. *Griswold v. Eastman,* 51 Minn. 189, 53 N. W. 542; *Chloupek v. Perotka,* 89 Wis. 551, 62 N. W. 537. The Union Pacific Railroad Company, after having constructed the embankment in controversy, and ostensibly owning or having some interest therein, and a right to the use and occupancy thereof and the land out of which the same was con-

structed, by its deed conveyed its title and interest unqualifiedly, and can not now, in the face of the solemn asseverations of title and ownership or those in privity with it, be heard to say that it had no title to such land, and conveyed nothing by such instrument. The doctrine of estoppel by deed would be of no value if such could be done. This court has held: "Whatever be the form or nature of the conveyance of real property, if the grantor therein sets forth on the face of such instrument by way of recital or averment, either in express terms or by necessary implication, that he is seized of a particular estate in the premises conveyed, then such grantor and all persons claiming under him are ever afterward estopped from denying that he was so seized and possessed at the time he made such conveyance." *Hagensick v. Castor,* 53 Neb. 495. This utterance is in harmony with the views expressed by the supreme court of Iowa, wherein it is said: "The doctrine of estoppel is a salutary one, and to establish the rule contended for by appellee would be to destroy the security of all land titles, and permit grantors, after solemnly affirming that they had title, to insist that they did not, although subsequent good faith purchasers may have parted with their money, as in this case, on the strength of the integrity of the title. There are, as it seems to us, no two sides to this question." *Van Husen v. Omaha B. & T. R. Co.,* 118 Ia. 366, 378.

We conclude, therefore, that the property denominated the road-bed or embankment on the land described in the conveyance of the railroad company, passed to the purchasers thereof from Street, the grantee therein named, and that the value thereof may, in the condemnation proceedings, be recovered as a part of the compensation justly due for the appropriation of the land on which constructed for right of way purposes.

As to the ties and rails on the embankment, which constitute the track proper, we are satisfied with the conclusion reached in the former opinion. These are more distinctively personal property. They have more of the

characteristics of personal property than of real property. Whether or not they passed with the conveyance of the land, must, we think, be determined by the nature of the transaction, and the circumstances surrounding the same. They are undoubtedly a species of property easily removable at the termination of the tenancy without material injury to the freehold. The railroad company, long after the purchase of the land, and until the proceedings in condemnation were begun, retained the possession and use of these tracks, and, of course, in a sense, the entire right of way, without objection and with the implied assent of the landowners. There may have been, and probably were, during this long period, changes, improvements and repairs. Under all accepted rules governing the rights of a licensee who has placed improvements in the nature of trade fixtures on real property, which, by agreement of parties, are to retain their character as personal property, an implied agreement of the right of removal is raised; and of rights of this character, when applied to this particular species of property, the purchasers of the land, we are satisfied, acquired no title or interest therein. They were not buying railroads, but real estate. What they contracted for was all the real estate described in their deed, with appurtenances properly belonging and attached thereto.

Respecting this subject it is said in *Rowand v. Anderson,* 33 Kan. 264, 268: "It may be conceded that a party who, under a parol permission or license, places upon the land of another a permanent improvement, with the right, when he desires, to enter and take it therefrom, may exercise that right at any time before the permission or license is revoked by the landowner, and probably he has the right to enter to remove a fixture within a reasonable time after the revocation; and it would seem that any subsequent vendee who purchased the land with notice of such parol agreement or license, and of the interest of the parties in the fixture, would be bound by such agreement. But we think this doctrine can not be carried to the extent

of binding or affecting injuriously third parties to whom the land has been conveyed without reservation, and to whose notice the parol license has not been brought." To the same effect it is said in an opinion by the supreme court of New York: "It will readily be conceded that the ordinary distinction between real estate and chattels exists in the nature of the subject, and can not in general be changed by the convention of the parties. Thus it would not be competent for parties to create a personal chattel interest in a part of the separate bricks, beams or other materials of which the walls of a house were composed. Rights by way of license might be created in such a subject, but it could not be made alienable as chattels, or subjected to the general rules by which the succession of that species of property is regulated. But it is otherwise with things which, being originally personal in their nature, are attached to the realty in such a manner that they may be detached without being destroyed or materially injured, and without the destruction of, or material injury to, the things real with which they are connected; though their connection with the land or other real estate is such that in the absence of an agreement or of any special relation between the parties in interest, they would be a part of the real estate." *Ford v. Cobb,* 20 N. Y. 344.

The right of removal of this property as personalty, under the circumstances disclosed by the record, comes fairly within the rule as above announced. If the property may be rightfully removed, as we think it may, then we see no good reason for holding otherwise than in the condemnation proceedings; its value is not properly an item for which compensation should be awarded to the owners of the real estate taken.

The judgment heretofore entered is modified so as to permit the recovery of the value of the embankment, including the riprapping; otherwise it is adhered to.

FORMER JUDGMENT MODIFIED.