BRADLEY ESTATE COMPANY v. LULU DU BRUTZ BRADLEY and Others.[1]

January 19, 1906.

Nos. 14,635—(192).

**Deed—Estoppel.**

> If a deed of bargain and sale, or quitclaim, on its face bears evidence that the grantors intended to convey, and the grantees expected to be invested with, a particular estate, the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him as if a formal covenant to that effect had been inserted. Rule applied, and *held*, a certain indenture, under which respondents claim title, was a conveyance in præsenti, and not an agreement for a conveyance, and the grantors were estopped from subsequently taking a conveyance of the same premises and asserting the same against their prior grantee.

Action in partition in the district court for Hennepin county, in which was involved a question of title between plaintiff and defendant Frank E. Powers as to a portion of the premises. The case was tried before Simpson, J., who made findings of fact and as conclusions of law found, inter alia, that plaintiff had no title or interest. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*J. M. Mason* and *J. A. Larimore*, for appellant.
*Cohen, Atwater & Shaw,* for respondents.

LEWIS, J.[2]

Action in partition, involving title to a two-ninths interest in the west twenty two feet of lot 6, block 49, town of Minneapolis. Both parties claim title under James A. Bradley, who died December 19, 1894. November 30, 1894, just before his death, Mr. Bradley executed a deed of the west one-third of lot 6 and the east one-third of lot 7 to the Union Theological Seminary of Virginia, and on the same day also executed two other deeds of other property in Minneapolis; one

[1] Reported in 106 N. W. 110.    [2] JAGGARD, J., took no part.

97 M.—11

to a certain asylum, and the other to a certain college. Bradley left a large number of heirs, and in March, 1895, one of them, Henry W. Bradley, acting for himself and certain other heirs, commenced suits to set aside the three deeds upon the ground that the grantor was not of mental capacity, and, as to the seminary deed, that the grantee was not a legal entity. During such proceedings, Bradley secured the services of other attorneys, one of them being Du Brutz Cutlar, of South Carolina, and on July 18, 1895, all the heirs, including Henry W. Bradley, executed a certain instrument conveying to Cutlar a one-third interest in lots 6 and 7:

> Whereas, H. W. Bradley has heretofore, with our consent and approval, instituted legal proceedings and commenced certain suits in our names against the trustees of Davidson College, the Grand Lodge of North Carolina, and the Union Theological Seminary of General Assembly, in the district court of the county of Hennepin, state of Minnesota, for the recovery of certain parcels of land and property hereinafter described and the determination of certain adverse claims against said lands, and for the setting aside of three certain pretended deeds purporting to be made by one James A. Bradley, and purporting to convey said real property; and whereas, the said suits were commenced and legal proceedings taken in our behalf with our consent and approval, and under our direction, and we do hereby wish to confirm and ratify the said action of H. W. Bradley, and provide for the maintenance of said suits, and any other suits necessary to set aside said alleged deeds or any of them:
>
> Now, therefore, this agreement witnesseth, that for this purpose, and in order to accomplish the results intended by the institution of said legal proceedings, and as compensation for all legal services of all attorneys who may be engaged therein, and in consideration of the covenants hereinafter expressed to be performed by the party of the second part, the parties of the first part (being, with the exception of J. M. Mason and Henry Bond, the only heirs at law of said James A. Bradley, deceased) do hereby grant, bargain, sell, convey, transfer and alien to the said Du Brutz Cutlar, the party of the second part,

his heirs and assigns, an undivided one-third of said property, of which the following is a more particular description.

The instrument also contained provisions which we may denominate a power of attorney, whereby the heirs constituted Du Brutz Cutlar their true and lawful attorney, irrevocably, to prosecute to final judgment the suits commenced as aforesaid, and to take any other action necessary for the determination of any claims to the property adverse to the rights and claims of the heirs and for the recovery of the premises and the quieting of the title thereto, and, further, to take charge and possession of the property and collect the rents. There was also an assignment to Cutlar of a sum not to exceed $500, of the accrued rents, for the purpose of meeting the disbursements and expenses of the litigation. The instrument also contained the following covenants on the part of Cutlar:

> And, for the purposes above named, said party of the second part further covenants, promises and agrees to employ competent counsel to represent all the parties to this instrument, and to provide that he and all other counsel appointed in the prosecution of said action shall be compensated for their services exclusively out of the undivided third part of said real property hereinbefore conveyed, and without any charge or liability therefor upon the part of the parties of the first part, or either of them; and said party of the second part is hereby authorized and empowered for us, and in our names, and in the name of each of us, to settle and compromise said adverse claims, or any of them, for such sum as in his judgment he may deem proper, whenever and at any time in his judgment the interests of the parties of the first part will be subserved thereby; and the said parties of the first part do hereby give and grant unto the party of the second part any and all right or authority necessary or proper for the due execution of the said power of attorney.

In connection with Henry W. Bradley, Du Brutz Cutlar and associate counsel proceeded to carry out the provisions of the power of attorney, and brought on for trial in the district court at Minneapolis the action pending against the seminary to test the validity of the

deed to that institution, and during the pendency of the action, the respective parties being duly represented in court by counsel, a stipulation of compromise and final adjustment was entered into, whereby it was stipulated, among other things, that the deed executed by James A. Bradley to the Union Theological Seminary of General Assembly be reformed, so as to express the true corporate name of the grantee, viz., the Trustees of the Union Theological Seminary of Virginia, and that the deed so reformed be declared valid and in all respects confirmed, and that immediately upon the entry of the decree defendants in that action, the trustees of the Union Theological Seminary, execute and deliver to plaintiffs in that action, the heirs, a quitclaim deed of the westerly one-third of lot 6, which is the property here involved. There were other provisions with reference to the division of the rents which had accrued and the appointment of receivers for the purpose of collecting the same. Upon the filing of the stipulation the court made findings of fact and conclusions of law, and on April 15, 1897, a decree was accordingly entered carrying into effect the provisions of the stipulation and in accord with the findings of the court.

February 28, 1898, the trustees of the Union Theological Seminary executed a conveyance to the several heirs of James A. Bradley, according to their respective interests, which deed recited that the consideration was one dollar, and other valuable considerations thereunto moving to the grantor, in accordance with the stipulation theretofore entered in the district court in the action there pending.

When the present action came on for trial in the district court, it was stipulated that the plaintiff claimed title to the two-ninths interest involved in this suit through the deeds from the seminary executed in February, 1898, and that defendant Powers claimed title under conveyances from Du Brutz Cutlar. The stipulation amounts to this: That there is involved in this action only a two-ninths interest in the westerly third of lot 6, now owned by respondent Powers by mesne conveyances from Cutlar, unless plaintiff acquired title to it by virtue of the deed from the seminary to the heirs, executed in pursuance of the settlement of the action brought to set aside the Bradley deed.

The case turns upon the intention of the parties, as gathered from the instrument executed between the heirs and Cutlar. If that inden-

ture amounted to an agreement to convey to Cutlar a one-third interest in the premises, when he should have completed the contract, then the trial court might have been required to determine that question before it could decide whether the title had passed at the time of the trial. On the other hand, if that instrument was in effect a grant to Cutlar, in præsenti, of a one-third interest in the premises, then the other questions suggested, whether Cutlar and his associates had accounted for money received, are immaterial and cannot be considered. If there were any doubt about the effect of the language used in this instrument, we might refer to the position of the parties at the time as tending to throw light upon the document; but it is unnecessary. They entered into a plan to bring about certain results. The heirs preferred to transfer a portion of the property which they expected to recover rather than become obligated to pay any specific amount of money, and Cutlar was satisfied to go on and do the work and take his chances upon a recovery, provided he was immediately vested with a one-third interest in the premises. It was within the power of the heirs, if they so chose, to require Cutlar to carry out his agreement before the conveyance took effect. In that case they would have executed an agreement to convey, instead of a conveyance, which course they did not follow, but vested in Cutlar an absolute title, and trusted him to carry out the terms of the agreement and secure the property, either in whole or in part by judgment or compromise. This latter purpose is manifest from the language used in the indenture. The words of the conveyance are: "The parties of the first part * * * do hereby grant, bargain, sell, convey, transfer and alien to the said Du Brutz Cutlar, the party of the second part, his heirs and assigns." And in the recital of Cutlar's covenants it is expressly stated that he and his associates shall be compensated for their services exclusively out of the undivided third part of the real property hereinbefore conveyed.

If the grantor, having no title or a defective title, conveys with warranty, a subsequently acquired title will inure to his grantee by way of estoppel. This is the general rule (16 Cyc. 689), recognized in Thielen v. Richardson, 35 Minn. 509, 29 N. W. 677, and applied as to prior incumbrances in Tappan v. Huntington, supra, page 31, and Rooney v. Koenig, 80 Minn. 483, 83 N. W. 399. The same prin-

ciple applies to a deed of bargain and sale, or quitclaim. If on its face the deed bears evidence that the grantors intended to convey and the grantee expected to be invested with an estate of a particular quality, the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him as if a formal covenant to that effect had been inserted. Van Rensselaer v. Kearney, 11 How. 297, 13 L. Ed. 703; 11 Am. & Eng. Enc. (2d Ed.) pp. 410, 411; Devlin, Deeds, § 944; Hagensick v. Castor, 53 Neb. 495, 73 N. W. 932; U. S. v. California & Oregon Land Co., 148 U. S. 31, 13 Sup. Ct. 458, 37 L. Ed. 354. The doctrine of estoppel, as illustrated by these cases, "is founded upon the best principles of morality, and recommends itself to the common sense of every one." It precludes the grantor from denying an affirmation in reliance upon which the grantee has acted in good faith and expended money or labor.

Du Brutz Cutlar and his associates were entitled to rely upon the position taken by the grantors, and they were justified in going on and working out the project for the benefit of both parties. The very deed under which appellant claims from the seminary was executed in pursuance of the plan contemplated by the Cutlar deed. It is of no significance that the original Bradley deed to the seminary was in fact valid, or that the heirs in fact had no title to convey at the time they executed the Cutlar deed. Possession of the premises by the heirs was of no importance. These suggestions are wide of the mark. The simple question is: Did the heirs assume to be the owners of the premises and to invest Cutlar with title in præsenti? They contemplated securing the property in whole or in part, either as a result of a decree adjudging the Bradley deed void, or by way of compromise based upon the supposition that it was void. They treated the title as though vested in them, and the object of the deed and power to Cutlar was to remove the apparent indicia of title in some one else. As a result of that position, they secured title to the premises, and it would be in disregard of the plainest principles of equity to permit them and their grantees to accept the fruits of the victory and repudiate the means by which it was acquired.

Order affirmed.